THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM, HOLTZMAN, Defendant-Appellant.

(No. 11636;

Fourth District—April 2, 1973.

SMITH, J., dissenting.

Prentice H. Marshall, of Champaign, and Edward Parsons, of American Civil Liberties Union, of Chicago, both for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Thomas L. Knight, Assistant State's Attorney, and Robert Wennerholm, Senior Law Student, of counsel,) for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

William C. Holtzman was convicted after a bench trial of criminal trespass to State supported land in violation of activity proscribed by section 21—5, chapter 38, Illinois Revised Statutes, 1969. Upon conviction, a fine was imposed. By this appeal from that conviction, the defendant urges that the evidence was insufficient to establish guilt beyond a reasonable doubt, and, further, that the statute defining the offense as here applied is violative of the defendant's constitutional rights to freedom of speech and freedom of petition.

We agree with the contention that the evidence does not establish a violation of the statute, and therefore we do not reach the constitutional issue.

Section 21—5 of chapter 38, so far as is here relevant, defines the offense as:

"Whoever enters upon land supported in whole or in part with State funds, * * * or any building on such land, * * * or remains upon such land or in such building after receiving notice from the State or its representative to depart, and who thereby interferes with another person's lawful use or enjoyment of such building or land, shall be fined not to exceed $1,000 or imprisoned in an institution other than the penitentiary not to exceed one year."

The People urge that the word "interferes" as used in the statute means that kind of conduct which by its nature tends to hinder, disrupt or obstruct the orderly function of the official enterprise being carried

on in the building or on the land. We accept that definition as generally applicable to the proscribed activity. As thus defined, the statute clearly prohibits activity that interferes with another person's use or enjoyment of such land or building after receiving notice to depart. Thus, entering upon land supported in whole or in part by State funds, or remaining thereon *after* receiving notice to depart and interfering are each essential elements of the offense.

The facts and evidence in this case establish that the defendant, a student at the University of Illinois at Champaign, was soliciting signatures to a petition demanding that the University stop purchasing iceberg lettuce. The defendant was in sympathy with the United Farmworkers Union and his activity was in furtherance of the so-called "lettuce boycott". He sought signatures in the Union Building, in the area of the snack bar, its lobby, and near the condiment trucks or trays in that area.

The evidence is that the defendant, as a student of the University and as one who had paid an activity fee, was entitled to use the facilities of the Union Building, including the snack bar area. Without a detailed recitation of the evidence, it is fair to say that his solicitation of signatures at the head of the cafeteria line caused some congestion and "interfered" with the orderly and apparently the fast movement of that line. The defendant was asked by an employee of the Union to stop his activity. The defendant did stop his solicitation in that location.

■■ The defendant then moved to the public lobby area outside the snack bar, outside the food serving or cashier area. In this new position, he again solicited signatures to his petition. A university police officer saw his activity and instructed him to discontinue. The officer handed the defendant a copy of the university regulation that sought to regulate *picketing* and to prohibit *picketing* inside university buildings. The defendant did not cease his efforts. John Cocker, assistant director of the Union, told the defendant he could not engage in his picketing in the new location. The defendant did not cease. Cocker left, returned with another police officer, and the defendant was thereafter arrested. There is no evidence that the defendant's conduct in the second or lobby location interfered with the use or enjoyment of the premises by any other person; thus, interference after the requisite notice is not established. The offense as defined by the statute is not established. (See *People v. Bufford*, 132 Ill.App.2d 417, 270 N.E.2d 550.) The conviction is therefore reversed.

Reversed.

SIMKINS, J., concurs.

Mr. JUSTICE SMITH dissenting:

I dissent because my view of the evidence is that there was interference as a matter of law, that is, a trier of the facts could so find. The majority opinion simply says that there was no evidence that his conduct interfered with the use or enjoyment of the premises by any other person. As I have said, I do not read the evidence to be this way at all. Accordingly a recital is in order.

Defendant was a student at the University of Illinois, Urbana, and for reasons of his own—certainly not in evidence—he was opposed to the serving and presumably the eating of non-union picked lettuce—he characterized such as "scab lettuce". His jeremiad took the form of soliciting signatures in the Illinois Union Building, a recreational center for students, to a petition—"Petition to End University Financial Support of Scab Lettuce Growers". Following this heading, the petition read that the "undersigned demand" the University to end its "unwarranted obstruction of self-determination for farm workers", that the University was using "its enormous purchasing power to support a small, self-interested clique of growers by buying their lettuce", and spoke to the theme that in so doing the University was helping to break the strike of lettuce pickers "who are trying to climb out of poverty", it demanded cessation of "meddling" in this labor dispute by the University using "its purchasing orders to support the growers", and demanded a stop to purchase "iceberg lettuce altogether", and explained, somewhat disingenuously the converse of the above, that by not buying lettuce the University "would not be cooperating with either" side, this was followed by a culinary observation that the University "should find other types of lettuce for use in salads" (not specified), and demanded "immediate initiation" of this policy—no scab iceberg lettuce—and that by doing so the University will then "conform to both the spirit and the letter of its own policies and of state law."—how this state of affairs would come about was not gone into, but left to imagination. In search of signatures, defendant first went to the basement area of the Union where the food services were located and stationed himself at the head of the cafeteria line speaking to those who passed to support the lettuce boycott and how this could be done—by signing his petition. He was asked to stop—and did, at least there. Since his petition related to food—and reasoning, we assume that the hungry would be the most apt to sign—he retreated to the snack bar—again to solicit signatures. This was during the noon hour. He was not in the food serving area as such, as he had been in the cafeteria, but instead he chose to make his stand near the pickle, ketchup and mustard stations. A police officer instructed him to discontinue what he was doing and handed him a form which read in part that, "Students

who picket on University premises must do so in a peaceful and orderly fashion. Picketing should not involve invasion of the rights of others, interference with the operations of the University, or jeopardy to public order and safety. Specifically * * * *Picketing inside University buildings is prohibited."* He declined to desist and continued his efforts. His *modus operandi* was simply to stop persons and ask them to sign his petition. Next, the Assistant Director of the building told him that he could not engage in his petitioning activity in the area which he had chosen, but nothing daunted, he continued his quest. Enter: The Chief of the University Police. He, likewise, advised defendant that he should discontinue what he was doing or leave the building. Defendant again declined and this time he was arrested for Criminal Trespass To State Supported Land. Though he merely spoke to prospective petitioners— urging them to support the boycott by signing his petition, the evidence certainly supports the conclusion that he stopped everyone within reach and not only urged them to sign his petition but urged them also to eat elsewhere. He had positioned himself in an area and at a time when there was a heavy flow of traffic. Ingress and egress to the snack bar was not easy, the entryways being sufficient to accommodate only two people. His conduct, or so it was testified to, did cause people to congregate about him, blocking such entryways and making it difficult for patrons of the snack bar to get in and out—they had to walk around him. There was some conflict in the evidence on some of these aspects—suffice it to say, there was evidence enough to support this recital.

The central issue, as I see it, as to the question of proof of guilt beyond a reasonable doubt, is whether by remaining in the building after receiving notice to depart, he did, as a matter of law, interfere "with another person's lawful use or enjoyment" of the Illini Union Building —in other words was there interference within the meaning of this section. Well, there was certainly not interference in the football sense, but indubitably there was a "butting in" though without actually obstructing anyone, certainly a meddling, though physical intervention was absent. The verb "interfere" equates with insinuate, impose, to butt, horn, cut, push, or press in—to worm in, to thrust oneself upon or impose upon —kibitzing, even, can be interference, not unlike interference on the television. To situate oneself as defendant did between the condiment trays, adjacent to a snack bar, during the noon hour when the traffic was heavy—the evidence supported this—to stop persons as they were coming or going through the snack bar line, and asking them to sign his petition, creating the congestion and inconvenience described above, is, in my opinion, to interfere with such persons' lawful use or enjoyment of the Union Building, particularly, their enjoyment of the snack bar. Indeed,

as an aside, who could savor prepandial or post their lunch knowing that there was "scab" lettuce about. In short, I consider defendant's activities to be interference in law, and thus, since the evidence was certainly ample, a trier of the facts was justified in finding him guilty of the offense with which he was charged. I would therefore affirm.