(No. 53403.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. DONALD DUDA *et al.,* Appellees.

*Opinion filed March 31, 1981.*

UNDERWOOD and RYAN, JJ., dissenting.

William J. Scott and Tyrone Fahner, Attorneys General, and J. William Roberts, State's Attorney, all of Springfield (Gary J. Anderson, Robert J. Biderman and Larry Wechter, of the State's Attorneys Appellate Service Commission, of counsel), for the People.

Howard M. Richard, of Katten, Muchin, Zavis, Pearl

& Galler, and Harvey Grossman and Roger Baldwin, all of Chicago, David Goldberger, of Columbus, Ohio, and Michael B. Metnick, of Springfield, for appellees.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Sangamon County, defendants, Donald W. Duda, Daniel James Norris, Timothy Kiser, Paul Evan Haynes and Peter K. Callahan, were convicted of the offense of criminal trespass to State-supported land (Ill. Rev. Stat. 1977, ch. 38, par. 21—5) and sentenced to the Sangamon County jail for two days. The appellate court reversed (82 Ill. App. 3d 525), and we allowed the People's petition for leave to appeal.

The facts are adequately stated in the appellate court opinion and will be reviewed here only to the extent necessary to discuss the issues. The complaints by which defendants were charged alleged that on September 3, 1978, each defendant "committed the offense of criminal trespass to state supported land in violation of Section 21—5 of chapter 38 of the Illinois Revised Statutes, in that the said defendant entered upon land, the grounds of the State House of the State of Illinois, located in Springfield, Sangamon County, Illinois, and remained upon the land after receiving notice from [a named] representative of the Secretary of State of the State of Illinois, and thereby interfered with the Illinois Secretary of State's lawful use of such land, to-wit: His legal duty to take charge of and preserve from waste and keep in repair such land, which land is supported in part with State of Illinois funds."

At trial, testimony showed that defendant Duda had sought permission to hold a demonstration on the Capitol grounds on September 3, 1978, advocating repeal of marijuana laws. Notwithstanding a denial of permission,

beginning at about 11:30 a.m., a crowd of 250 to 300 demonstrators gathered on the Capitol grounds. A number of witnesses testified for the People as to the conduct of the demonstrators and the events leading up to the arrest of defendants. At about 11:30 a.m. two males were observed striking the Capitol's replica of the Liberty Bell with wood and metal objects. They were told to desist and did so. With the exception of this incident, it appears that the demonstration remained orderly until sometime after 1 p.m. Thereafter, consumption of alcoholic beverages and some drunkenness became evident. One witness observed 16 demonstrators sitting in a tree. This was confirmed by other witnesses, and there was testimony concerning broken tree branches resulting from the incident. In general, the demonstration became "noisy," some signs were torn down, and the Capitol grounds became littered with beverage containers, paper sacks, and other debris.

At 2 p.m. officials from the Secretary of State's office conferred and determined that the demonstration should end at 3 p.m. Defendant Duda and other demonstrators were advised of this decision and Duda, using a megaphone, informed the crowd. Officials of the Secretary of State's office also announced the termination of the demonstration and informed the crowd that refusal to leave could result in arrest. At approximately 3:30 p.m. a crowd-control team of 150 officers was called onto the grounds. The crowd was twice advised to leave the area. Officers then moved in to disperse the demonstration. At this time, after refusing to depart, defendants Duda, Norris, Callahan, and Kiser were arrested. At approximately 4:45 p.m. some demonstrators returned to the Capitol grounds. They were asked to leave several times, then a second sweep of the grounds was conducted, at which time defendant Haynes, after refusing to depart, was arrested. Lance Charlson, a lieutenant with the Divi-

sion of Investigation, Secretary of State's office, testified that defendant Duda, in addition to passing on to the crowd the official directive to disperse, asked the crowd "Should we leave or should we stay? Should we sit down for our rights and stay here," whereupon the crowd began to chant. Lieutenant Charlson also testified that defendants Norris and Callahan, just prior to being arrested, locked arms with nearby demonstrators. With regard to defendant Norris, Lieutenant Charlson testified that he "encouraged other persons around him to hold onto him, intertwine arms and sit down on the ground." He testified that defendant Callahan "encouraged other participants in the area to detract from our efforts to remove him from the crowd ***."

Section 21—5 of the Criminal Code of 1961 provides, in pertinent part:

> "(a) Whoever enters upon land supported in whole or in part with State funds, or Federal funds administered or granted through State agencies or any building on such land, after receiving, immediately prior to such entry, notice from the State or its representative that such entry is forbidden, or remains upon such land or in such building after receiving notice from the State or its representative to depart, and who thereby interferes with another person's lawful use or enjoyment of such building or land, commits a Class A misdemeanor." Ill. Rev. Stat. 1977, ch. 38, par. 21—5(a).

Defendants concede that the evidence proves the first two elements of the offense of criminal trespass to State supported land: that they received proper notice to depart and that they remained after such notice. The question presented is whether the People have proved beyond a reasonable doubt that each defendant "thereby interfer[ed] with another person's lawful use or enjoyment of such building or land."

The People contend that defendants' "refusal to depart resulted in a continuance of temporary damage to

the grounds, thereby interfering with the statutory duty of the Secretary of State to preserve the area from physical damage." Citing the duties imposed upon the Secretary of State by section 5 of the Secretary of State act (Ill. Rev. Stat. 1977, ch. 124, par. 5(7)), the People argue that "Defendant's conduct in refusing to depart the grounds and in encouraging others to remain in their places, while the crowd continued to scar the Liberty Bell replica, and threaten further damage by virtue of their increased alcohol consumption, interfered with the Secretary's use and enjoyment of the grounds."

> In rejecting this contention the appellate court said: "We cannot agree. Simply stated, we do not feel that this is the type of interference that the legislature had in mind when it drafted the statute. The words 'lawful use or enjoyment,' given their plain meaning, are clearly not broad enough to encompass the duty to maintain." 82 Ill. App. 3d 525, 529.

We need not and do not decide whether the appellate court correctly construed the statute for the reason that, even if the interpretation for which the People argue is correct, the evidence is insufficient to sustain defendants' convictions.

Citing *Washington Mobilization Committee v. Cullinane* (D.C. Cir. 1977), 566 F.2d 107, the People contend that defendants' refusal to leave the State House grounds after receiving notice to leave is sufficient to sustain the convictions under section 21—5. *Cullinane* involved a challenge to a section of the District of Columbia Code providing for punishment for refusal to depart an area when ordered to do so by police. The court of appeals upheld the validity of the statute even though the persons ordered to disperse had not previously engaged in violent or obstructive behavior.

The People argue:

"Likewise, in the present case, even though the defendants were not proven to have engaged in the conduct which prompted the order to disperse, they were nevertheless obligated to obey the police order. \*\*\* The aim of the statute is to prevent disorders from the failure of persons to accommodate police notice to depart, an aim which could be thwarted if police were required only to remove those persons responsible for the initial disturbance. Police cannot be burdened with such fine distinctions when called upon to enforce their orders \*\*\*."

We find *Cullinane* inapposite for the reason that the statute involved differed markedly from that considered here.

A conviction under section 21—5 requires proof of three elements: (1) notice to depart, (2) remaining after such notice, and (3) interference with another person's lawful use or enjoyment of land. Acceptance of the People's argument that "refusing to depart the grounds" is sufficient to support the convictions would, in effect, merge the third element into the second and render the third element surplusage. It is axiomatic that each provision of a statute must, if possible, be given some reasonable meaning (*People v. Warren* (1977), 69 Ill. 2d 620, 627) and that no word, clause, or sentence should unnecessarily be rendered meaningless or superfluous (*People v. Lutz* (1978), 73 Ill. 2d 204, 212). To hold that proof of a mere refusal to depart suffices to demonstrate interference with another person's lawful use or enjoyment of land would ignore the plain language of section 21—5, and we decline to do so.

We agree with the appellate court that the record shows no interference with any official activity or public access to the grounds. The demonstration took place on a Sunday afternoon, during a holiday weekend, and the

State House was closed. There is no evidence that grounds keepers or other personnel were delayed or interfered with in the performance of their duties. In short, the manner in which defendants' conduct was supposed to have interfered with the Secretary of State's performance of his duties was not alleged in either the complaints or bills of particulars or shown by the evidence. We have considered *People v. Barnett* (1972), 7 Ill. App. 3d 185, cited by the People in support of their argument that "the requisite interference with the rights of others need not be immediate or coincide with the physical presence of other persons." There, the defendant and about 40 others entered a University of Illinois Circle Campus building late in the afternoon of May 6, 1970, remained past the normal closing time, and locked themselves behind a steel door. The appellate court did not expressly address the question whether the elements of section 21—5 were met, but instead dealt with constitutional issues. Further we find *Barnett* factually distinguishable on the question of implied interference. Here the demonstration was outside, did not occur during business hours, and did not involve locking doors or barricading.

The People also argue that defendant Duda's "encouraging" the crowd to remain and the other defendants' linking of arms constituted proof of interference. Initially, we observe that no evidence suggests that defendants encouraged or fostered any criminal activity other than the refusal to obey a lawful police order to depart. Inasmuch as we have concluded that proof of a refusal to depart does not itself suffice to demonstrate interference, then *ipso facto* the encouragement of others to so refuse does not constitute proof of interference under section 21—5.

Because of our determination that the People have not proved a violation of section 21—5 of the Criminal Code of 1961, we find it unnecessary to consider defendants'

contentions regarding the constitutionality of that section.

For the reasons stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

Defendants, the appellate court, and a majority of my colleagues concede that defendants not only held their "smoke-in" on the Capitol grounds after being refused permission to do so, but also refused when later requested to leave after occupying the grounds for three to four hours. Their convictions are reversed, however, because they were not "interfer[ing] with another person's lawful use or enjoyment" of the grounds. (Ill. Rev. Stat. 1977, ch. 38, par. 21—5(a).) This is said to be so despite undisputed testimony that some of the group led by defendant Duda were drunk, others littering the grounds, striking the liberty bell replica with wood and metal objects, sitting in trees and breaking tree branches, and still others were linking arms and sitting or lying down so as to impede their removal. The appellate court said this conduct did not constitute "permanent" interference, but only created a "temporary eyesore," but I find no statutory requirement that the interference with lawful use or enjoyment be permanent. Nor does it seem to me the General Assembly could have intended to permit interference so long as it was something less than permanent.

My colleagues justify their reversal of the convictions because the record shows "no interference with any official activity or public access to the grounds." (84 Ill. 2d at 412.) It seems to me, however, quite clear that the conduct of these defendants constituted a plain and immediate interference with the duty of the Secretary of State to preserve and protect the Capitol grounds. (Ill. Rev. Stat. 1977, ch. 124, par. 5(7).) Certainly we need not ignore the obvious fact that enjoyment of the normally

attractive Capitol grounds by passing pedestrians or motorists was diminished by the accumulated litter. And to say that the presence of 150 law-enforcement officers attempting to remove several hundred reluctant demonstrators does not interfere with or inhibit to any degree the public's right to use and enjoy the Capitol grounds and the Secretary's duty to preserve and protect them is a dissembling exercise which I cannot join.

I would affirm the judgments of conviction.

MR. JUSTICE RYAN joins in this dissent.