2015 IL App (1st) 122585
Nos. 1-12-2585 & 1-14-1289 (cons.)
Opinion filed August 26, 2015

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 MC1 232262 |
| | ) | |
| JESUS QUIROGA, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Jesus Quiroga served in various volunteer capacities, including on the Local School Council (LSC), at George Pullman Elementary School where two of his children attended. Weeks after a LSC meeting at which he wrangled with Pullman's principal over an incident involving his daughter, the school sent Quiroga a letter, which he may or may not have received, notifying him that he had to seek permission before entering school property. Pursuing his complaint with the principal, on the last day of school, Quiroga stood on the sidewalk and in the street in front of the school and solicited parents to sign a petition to remove the principal. Soon, the principal contacted police and Quiroga was arrested, charged, and later convicted in a bench trial, with criminal trespass to state-supported land.

¶ 2    On appeal, Quiroga contends the State did not carry its burden on two of the three elements of the offense of criminal trespass to state-supported land—that he interfered with a person's lawful use or enjoyment of the property or that he had received notice that his entry was forbidden. 720 ILCS 5/21-5(a) (West 2010). We reverse on the lack of evidence that Quiroga hindered or disrupted or obstructed anyone's use or enjoyment of the school property that day.

¶ 3                                    Background

¶ 4    At trial, the principal of George Pullman Elementary School, Felicia Sanders, testified that on April 27, 2011, she, Quiroga, other parents, and school officials attended a LSC meeting at the school. During the meeting, Quiroga started yelling and shouting profane and threatening statements and appeared to invite the chair of the LSC into a physical altercation. After the chair dismissed the meeting, Quiroga approached within six inches of Sanders, before two other members of the LSC stepped between them. The next day, Sanders drafted a violation of visitor protocol letter addressed to Quiroga that read, in part, "in light of your abusive behavior at the school, you may no longer enter the building or come onto the school grounds unless you first call the main office *** to state the reason for your visit and to request permission to enter onto school property." But Sanders did not mail the letter until weeks later, May 19, 2011, after checking with superiors and the legal department to make sure she complied with proper procedures.

¶ 5    Quiroga had two Chicago addresses on file with the school: 352 South Kensington Avenue and 9 West 115th Street. Sanders mailed two copies of the letter to Quiroga at each address, one via certified mail and one via regular mail. The post office returned both copies of

the letter sent to the 352 South Kensington Avenue and the certified letter sent to 9 West 115th Street; only the letter sent by regular mail to 9 West 115th Street was not returned.

¶ 6 Sanders testified that on the morning of June 17, 2011, when school ended for the year, she was in the main office when, 20 minutes before dismissal, some parents came into the office and told her that someone outside was harassing them. She looked out a window in her office, and saw Quiroga walking back and forth approaching parents on the playground, on the sidewalk, and in their cars, waiting for their children to be released. Quiroga held something about the size of a sheet of paper, but she did not know what he was doing. Sanders called her management support director, spoke to the school's off-duty Chicago police officer, and then contacted 911 because she believed Quiroga was in violation of the terms of the visitor protocol letter as he had not called ahead for permission to be on school grounds.

¶ 7 On cross-examination, Sanders conceded that she saw Quiroga near the school regularly when he dropped off and picked up his children. The parties stipulated that George Pullman Elementary School receives state and federal funding.

¶ 8 Michael Ricketts, the senior compliance facilitator for the Chicago Public Schools, testified that he trains LSC members to ensure compliance with state laws and regulations. He had met Quiroga at an LSC meeting and at a one-on-one meeting with him at a McDonald's in May 2011, but could not recall the exact date. At their meeting, Quiroga told Ricketts that he received a letter from Sanders barring him from the school and that he was "truly upset about that." On cross-examination, Ricketts initially stated that he saw Sanders and Quiroga at an LSC meeting in June, but later stated that the LSC meeting occurred before he met with Quiroga at

McDonald's in May. He further stated that Quiroga requested to meet him at the McDonald's where they discussed the letter and Quiroga's daughter.

¶ 9 Quiroga testified that two of his children attend George Pullman Elementary School and that in addition to the LSC, he is member of the school's Bilingual Council and the No Child Left Behind Council. He went to the school for various meetings on May 4, 5, 18, and 19, and June 6 of 2011, and saw Sanders each time. As he had not received the letter from Sanders, he did not call ahead before entering the school on any of those dates.

¶ 10 On June 17, 2011, Quiroga went to Pullman with a black notebook containing a petition to remove Sanders. He solicited signatures on the sidewalk and in the street, but never stepped on the playground. He acknowledged that he met with Ricketts, but testified that they only discussed Sanders' "mal-conduct," and not the letter. He denied having an outburst at the LSC meeting on April 27. On cross-examination, Quiroga acknowledged that he provided the school with two addresses: his "base address" of 352 South Kensington Avenue, and his "emergency contact person" and current residence address at 9 West 115th Street. He also said some of the parents signed his petition while others did not, and that he met with Ricketts at the McDonald's on May 11.

¶ 11 Before announcing its decision, the court stated that it had observed the demeanor of the witnesses while testifying and determined the weight to afford their testimony. The court then outlined the facts, accepting the contention that an incident occurred at the April 27 meeting, which prompted Sanders to draft a letter to Quiroga restricting his access to the school. The court noted that Sanders testified credibly regarding following protocols before mailing the letter to Quiroga's two addresses. Because Sanders was unable to mail the letter before May 19, the trial

court concluded that his presence at the school for meetings before May 19 was irrelevant to the charged offense.

¶ 12    The trial court recounted Sanders' testimony regarding the events of June 17, and found Quiroga's argument of a content-based violation of his First Amendment rights "does not fly in this Court's opinion" as Sanders did not know what Quiroga was doing outside, but called police on the basis of the visitor protocol letter. The court proceeded to the issue of notice. As to that element, the court found Ricketts testified credibly that he and Quiroga discussed the letter when they met at McDonald's. The court stated that the testimony of Ricketts and Sanders was not impeached, and that Quiroga was "very selective in his responses." The court held that the State had met its burden of proving Quiroga guilty of criminal trespass to state-supported land, and sentenced him to six months' supervision.

¶ 13                                  Analysis

¶ 14    Quiroga challenges the sufficiency of the evidence to sustain the conviction, contending that the State presented no evidence that he interfered with anyone's use or enjoyment of the school property or proved that he received the requisite notice under the statute. He maintains his conduct cannot be the basis for finding he interfered with anyone's use or enjoyment of the school property, and Ricketts' and Sanders' testimony was insufficient to prove he actually received Sander's letter.

¶ 15    Where a defendant challenges the sufficiency of the evidence to sustain his or her conviction, the reviewing court must consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *People v. Jordan*, 218 Ill. 2d 255, 270 (2006). This

standard recognizes the responsibility of the trier of fact: (i) to determine the credibility of the witnesses and the weight to be given their testimony; and (ii) to resolve any conflicts and inconsistencies in and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court will not overturn the decision of the trier of fact unless the evidence appears to be so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 16    To sustain Quiroga's conviction, the State must prove: (i) state or federal funds supported the land in whole or in part; (ii) Quiroga received notice forbidding his entry; and (iii) after receiving notice, Quiroga interfered with another person's use or enjoyment of the land. 720 ILCS 5/21-5(a) (West 2010). A defendant receives notice within the meaning of the statute if he or she received notice personally, either orally or in writing. 720 ILCS 5/21-5(b) (West 2010).

¶ 17                1. Element of Interfering With the Use or Enjoyment of Land

¶ 18    Quiroga concedes that Pullman receives state and federal funds, but challenges the sufficiency of the evidence to show that his conduct interfered with anyone's use or enjoyment of the land. This court has held that an individual interferes with the use or enjoyment of land if he or she engages in the "kind of conduct which by its nature tends to hinder, disrupt or obstruct the orderly function of the official enterprise being carried on in the building or on the land." *People v. Holtzman*, 10 Ill. App. 3d 528, 529-30 (1973). Quiroga, citing *Holtzman* and *People v. Duda*, 84 Ill. 2d 406, 411-14 (1981), contends the State's evidence was inadequate to support a finding that he interfered with anyone's use or enjoyment of the school.

¶ 19    *Holtzman* involved a University of Illinois student soliciting signatures for a petition while standing at the head of the cafeteria line. *Holtzman*, 10 Ill. App. 3d at 530. After being asked by an employee to stop, the defendant moved outside the food serving area to a public lobby. *Id*. A university police officer and a university official told defendant that he could not picket in the new location, but he refused to stop. *Id*. The reviewing court found defendant's conduct in the first location, the cafeteria line, "caused some congregation and 'interfered' with the orderly and apparently fast movement of that line," but that he stopped his solicitation at that location when asked to leave and no evidence indicated "defendant's conduct in the second or lobby location interfered with the use or enjoyment of the premises by any other person." *Id*.

¶ 20    In *Duda*, the supreme court had to determine whether a defendant who organized a protest of hundreds of people at the state capitol building on a Sunday interfered with any official or public access to the grounds, after there was some damage to the property. *Duda*, 84 Ill. 2d at 409. The Secretary of State's Office determined that the demonstration should end, and informed the defendant; however, the crowd refused to leave the area. *Id*. The supreme court, after noting that the demonstration took place on a Sunday afternoon during a holiday weekend when the State House was closed, found no evidence that the protest delayed or interfered with groundskeepers or other personnel in the performance of their duties and that proof of a mere refusal of the crowd to depart was insufficient to demonstrate interference with another person's lawful use or enjoyment of land. *Id*. at 412-13

¶ 21    As in *Holtzman* and *Duda*, we find the State failed to meet its burden that Quiroga caused any interference with official or public access to the grounds or that other personnel were delayed or interfered with in the performance of their duties through his activity outside the

school that day. Indeed, Sanders acknowledged that she did not know what Quiroga was doing when she saw him approaching parents on the playground, on the sidewalk, and in their cars, but called police and security personnel because she believed he had violated the visitor protocol letter sent to him. Moreover, Sanders acknowledged on cross-examination that she regularly saw Quiroga near the school grounds when he picked up and dropped off his children.

¶ 22    The evidence discloses that parents' complaints prompted Sanders' observations that Quiroga's conduct constituted harassment. But, this statement constitutes inadmissible hearsay if offered to prove the truth of the matter asserted, *i.e.*, that Quiroga was harassing parents, and could only be used under an exception to the hearsay rule to show its effect on Sanders. *People v. Gonzalez*, 379 Ill. App. 3d 941, 954 (2008). Thus, while the statement was properly introduced to show why Sanders left the main office, looked out her window, and observed Quiroga's activity outside, it could not be used as evidence to prove Quiroga interfered with the parents' use or enjoyment of the school. As the State introduced no further evidence to prove this element of the offense, we find that the State failed to establish Quiroga's guilt of the charged offense beyond a reasonable doubt.

¶ 23                                2. Element of Notice

¶ 24    Quiroga also contends that the State failed to prove beyond a reasonable doubt that he had notice of the ban under the statute. Though the record shows conflicting testimony on this matter at trial, the court resolved the issue in favor of the State. Regardless, having determined that Quiroga's conviction must be reversed, we need not delve into the issue of notice.

¶ 25                                Conclusion

¶ 26    We reverse the judgment of the circuit court of Cook County.

¶ 27    Reversed.