No. 81548–Agenda 11– May 1997.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAN WATTS, Appellee.

Opinion filed February 20, 1998.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, Dan Watts, was convicted of home repair fraud under the Home Repair Fraud Act (the Act) (815 ILCS 515/1
 et seq.
 (West 1994)) in a bench trial in the circuit court of Lake County. The appellate court reversed the conviction, concluding that the Act contains an unconstitutional mandatory presumption which impermissibly relieves the State of its burden of proving that defendant did not intend to perform the promised home repairs. 281 Ill. App. 3d 434. The State filed a petition for leave to appeal as a matter of right, under Supreme Court Rule 317 (134 Ill. 2d R. 317). We granted that petition, and now affirm the decision of the appellate court.

BACKGROUND

Defendant was indicted on charges of theft (720 ILCS 5/16–1(a)(2)(A) (West 1994)) and home repair fraud (815 ILCS 515/3(a)(1) (West 1994)). The theft count alleged that defendant knowingly obtained control over the property of the alleged victims by deception, in that he accepted money from the victims by promising to perform home repairs which he had no intent to actually perform. The home repair fraud count similarly alleged that defendant had knowingly entered into a contract for home repair when he had no intent to perform the promised work.

There was little dispute over the facts at trial. The Lutz family decided to build an addition to their home in Highland Park. In September 1993, they contacted defendant about serving as the general contractor for the construction of the addition. On February 12, 1994, the Lutzes and defendant entered into a contract under which defendant was to serve as the general contractor. Under the terms of the contract, defendant was to receive a total of $67,509 in compensation. One third of this sum was to be paid as an initial retainer, and a third was to be paid when the work began. The remaining third was to be paid in increments as defendant incurred costs, with full payment of any outstanding balance to be made within 30 days of the completion of construction.

By the time the contract was executed, the Lutzes had paid the initial retainer of $22,800. Defendant told the Lutzes that he would use this money to purchase materials, secure subcontractors, and arrange for building permits. Defendant testified at trial that he ordered and made down payments on some of the materials required for the project, though he admitted on cross-examination that he could not produce receipts for these materials. Defendant also procured the necessary work permits, and contacted seven subcontractors–four electricians, two plumbers and an excavation firm–in connection with the work on the Lutz home. He solicited bids from each of the seven, and hired the excavation firm.

The actual construction of the addition did not last long. The architectural plans for the construction were approved in early April 1994. On April 19, defendant began working on the project. On April 20, he arrived at the home with the excavation subcontractor, who performed the necessary excavation. Defendant paid the subcontractor $1,680 for the work done that day. However, three persons (the architect for the work, the Highland Park building inspector, and another contractor) each told the Lutzes that the hole that the subcontractor had dug was too deep, and, as a result, threatened to cause the existing Lutz home to collapse into the new hole.

According to Mrs. Lutz, on April 23, defendant asked the Lutzes for additional money which he claimed he needed in order to connect pipes from the house to the storm sewer. The contract provided that the next payment was due at the time that work commenced. Because of the problem with the excavation, the Lutzes refused to pay defendant any additional sums. On April 25, defendant stopped working on the Lutz home and removed his employees and their equipment from the job. Defendant testified that he did this because the Lutzes told him that they did not want him to continue working on the project. The Lutzes had numerous conversations with defendant in the weeks that followed, although they never paid defendant and he never resumed working on their home. Mrs. Lutz conceded that on three occasions between April 28 and May 1, defendant offered to continue work on the project at his own expense, and would not expect any payment from the Lutzes until he completed the project. She also testified that they did not accept any of these offers. Thereafter, defendant was charged with theft and home repair fraud.

At the conclusion of the bench trial, the court found defendant not guilty of the theft charge, and guilty of the home repair fraud charge. With respect to the theft count, the court found that the State failed to prove that defendant had not intended to perform the construction services at the time that he entered into the contract. Therefore, an element of theft–intent “to deprive the owner permanently of the use or benefit of the property” (720 ILCS 5/16–1(a)(1)(A) (West 1994))–was not established by the evidence.

However, the court reached a different conclusion on the home repair fraud count. The portion of the Act under which defendant was indicted defines home repair fraud as having two elements: (1) entering a contract for home repair, and (2) doing so with the intent not to perform the work, or with the knowledge that the work will not be completed. 815 ILCS 515/3(a)(1) (West 1994). The Act also specifies that “it shall be a rebuttable presumption of intent” not to perform where (1) the defendant did not substantially perform the promised work; (2) the defendant refused to refund the victim's payments; and (3) the defendant committed any of seven other acts enumerated in the statute, such as failure to use qualified personnel, or failure to notify a customer of a change in business name. See 815 ILCS 515/3(c) (West 1994).

There was no dispute that defendant had entered into a contract for home repair. Thus, the only question at trial was whether defendant had intended to perform the promised work at the time he entered into the contract. While the trial court found that the State had not proved that defendant did not intend to perform the home repairs beyond a reasonable doubt, as the theft count required, the court found that the State had proved the factors necessary to raise a presumption of intent under the Act. Specifically, the court found that the State had proved that defendant did not substantially perform the work; had refused to return the victims' payments; and had failed to use qualified personnel by hiring the excavation subcontractor. Thus, the court concluded that the statutory presumption of intent was triggered. The court also found that the defendant failed to rebut that presumption. For these reasons, the court entered a finding of guilty on the home repair fraud count.

Defendant appealed, and the appellate court reversed the conviction. The appellate court determined that the Act's intent presumption is mandatory, that is, it tells the fact finder that it must assume the existence of intent if the State proves the existence of the factors listed in the statute, unless the presumption has been rebutted. 281 Ill. App. 3d at 440. The appellate court further concluded that once the presumption of intent is triggered, the burden of persuasion shifts to the defendant to disprove the element of intent. Under the United States Supreme Court's holding in 
Francis v. Franklin
, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985), and other cases, the appellate court ruled that such a mandatory, burden-shifting presumption violates due process of law under the United States and Illinois Constitutions. 281 Ill. App. 3d at 442.

The appellate court also determined that the State was collaterally estopped from retrying defendant for home repair fraud because, in a retrial on the home repair fraud count, the trial court would have to decide whether defendant intended to perform the home repairs without the aid of the statutory presumption. The appellate court noted that in the original trial, the State had been required to prove, as an element of the theft count, that defendant did not intend to perform the promised work. The appellate court further held that, because the trial court explicitly found that the State had failed to prove the element of intent, the issue of defendant's intent had been adjudicated and could not be re-presented to the trial court. The State appealed.

ANALYSIS

The Act provides, in relevant part:

“§3. Home Repair Fraud

(a) A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly:

(1) Misrepresents a material fact relating to the terms of the contract or agreement or the preexisting or existing condition of any portion of the property involved, or creates or confirms another's impression which is false and which he does not believe to be true, or promises performance which he does not intend to perform or knows will not be performed; ***

* * *

(c) For purposes of subsection (a), paragraph (1), it shall be a rebuttable presumption of intent or knowledge that a person promises performance which he does not intend to perform and knows will not be performed when, after no performance or no substantial performance of a contract or agreement for home repair, he fails or refuses to return payments made by the victim and he:

(1) fails to acknowledge or respond to a written demand for commencement or completion of home repair within 10 days after such demand is mailed or presented to him by the victim or by the victim's legal representative or by a law enforcement or consumer agency acting on behalf of the victim; or

(2) fails to notify the victim in writing of a change of business name or address prior to the completion of the home repair; or

(3) makes false statements or representations to the victim to excuse his non-performance or non-substantial performance; or

(4) uses deception to obtain the victim's consent to modification of the terms of the original contract or agreement; or

(5) fails to employ qualified personnel necessary to perform the home repair; or

(6) fails to order or purchase the basic materials required for performance of the home repair; or

(7) fails to comply with municipal, county, State or federal regulations or codes relating to the performance of home repair.

Intent and knowledge shall be determined by an evaluation of all circumstances surrounding a transaction and the determination shall not be limited to the time of contract or agreement.

Substantial performance shall not include work performed in a manner of little or no value or work that fails to comply with the appropriate municipal, county, State or federal regulations or codes.” 815 ILCS 515/3 (West 1994).

Subsection (a), paragraph (1), of the Act sets forth the two elements of home repair fraud under which defendant was convicted: (1) entering a contract for home repair; and (2) having no intent to perform as promised under the contract. Subsection (c), with which we are concerned here, provides that, if the State proves three other factors, 
i.e.
, that the defendant failed to perform or substantially perform the promised work, failed or refused to return payments, and committed any of the seven “other” types of actions, then the fact finder “shall” presume that the defendant intended not to perform the work as promised, unless that presumption is rebutted. The question before us is whether the presumption set forth in subsection (c) violates the constitutional limits on the State's right to use presumptions in proving defendant's guilt.

I. Standards for Reviewing the Constitutionality of

Presumptions

A presumption is a legal device which permits or requires the fact finder to assume the existence of a presumed or ultimate fact, after certain predicate or basic facts have been established. See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §302.1, at 85 (6th ed. 1994). This court has stated that presumptions may be divided into two broad categories: permissive and mandatory. 
People v. Hester
, 131 Ill. 2d 91, 99-100 (1989). A permissive presumption, or inference, is one which merely allows, but does not require, the fact finder to infer the existence of the ultimate or presumed fact upon proof of the predicate fact, without placing any burden on the defendant. 
County Court v. Allen
, 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2224 (1979). With a permissive presumption, the fact finder “is free to accept or reject the suggested presumption.” 
Hester
, 131 Ill. 2d at 99.

A mandatory presumption, on the other hand, is one

“where the fact finder is not free to reject the proffered presumption. A mandatory presumption may be conclusive, that is `an irrebuttable direction' [citations], or it may shift the burden of proof.” 
Hester
, 131 Ill. 2d at 99.

Mandatory, irrebuttable presumptions (or conclusive presumptions) “relieve[ ] the State of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts.” 
Francis
, 471 U.S. at 317, 85 L. Ed. 2d at 355, 105 S. Ct. at 1972. Once such a presumption is triggered, the defendant is not allowed to attempt to rebut the connection between the proven and presumed facts. 
Sandstrom v. Montana
, 442 U.S. 510, 517, 61 L. Ed. 2d 39, 46-47, 99 S. Ct. 2450, 2456. Mandatory presumptions which shift the burden of proof are commonly referred to as rebuttable presumptions, and may be further divided into two groups: those that shift the burden of 
production 
to the defendant and those that shift the burden of 
persuasion
. See generally J. Weinstein, Weinstein's Federal Evidence §303.06, at 303-18 (2d ed. 1997); S. Jacobson, 
Mandatory and Permissive Presumptions in Criminal Cases: The Morass Created by Allen
, 42 U. Miami L. Rev. 1009, 1019-22 (1988). 
When a mandatory rebuttable presumption shifts the burden of 
production 
to the defendant, the fact finder must find the presumed fact upon proof of the predicate facts only if the defendant fails to offer some quantum of evidence which would tend to rebut the presumed fact. If that quantum of evidence is produced, the presumption is eliminated. 
Allen
, 442 U.S. at 157 n.16, 60 L. Ed. 2d at 792 n.16, 99 S. Ct. at 2225 n.16. When a rebuttable presumption shifts the ultimate burden of 
persuasion 
to the defendant, then, upon proof of the predicate facts, the fact finder is required to find the presumed fact unless the defendant persuades it not to do so. 
Allen
, 442 U.S. at 157 n.16, 60 L. Ed. 2d at 792 n.16, 99 S. Ct. at 2225 n.16.

Inferences and presumptions play “a vital role in the expeditious resolution of factual questions” (
Hester
, 131 Ill. 2d at 98) and “are a staple of our adversary system of factfinding.” 
Allen
, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224. However, the use of presumptions and inferences to “prove” an element of a crime may raise due process concerns. The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” 
In re Winship
, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970). Thus, “the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated.” 
Tot v. United States
, 319 U.S. 463, 467, 87 L. Ed. 1519, 1524, 63 S. Ct. 1241, 1245 (1943). See also, 
e.g
., 
Francis
, 471 U.S. at 313, 85 L. Ed. 2d at 352-53, 105 S. Ct. at 1970.

The United States Supreme Court has held that when there is some corroborating evidence of the defendant's guilt, the constitutionality of permissive presumptions should be judged under a “more likely than not” standard. Under this standard, the permissive presumption will satisfy due process concerns if the presumed fact is more likely than not to flow from the predicate fact. 
Allen
, 442 U.S. at 167, 60 L. Ed. 2d at 798, 99 S. Ct. at 2230. However, where the permissive presumption is the “sole and sufficient basis for a finding of guilt,” the presumed fact must flow beyond a reasonable doubt from the proven, predicate fact. 
Allen
, 442 U.S. at 166-67, 60 L. Ed. 2d at 797-98, 99 S. Ct. at 2229-30. This court has adopted these tests for permissive presumptions. 
Hester
, 131 Ill. 2d at 100; 
People v. Housby
, 84 Ill. 2d 415, 420 (1981).

The United States Supreme Court has long held that mandatory irrebuttable presumptions are unconstitutional. See, 
e.g
., 
Sandstrom
, 442 U.S. at 521-23, 61 L. Ed. 2d at 49-51, 99 S. Ct. at 2458-59 (citing 
Morissette v. United States
, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952), and 
United States v. United States Gypsum Co.
, 438 U.S. 422, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978)). The Court has explained that irrebuttable mandatory presumptions are unconstitutional because they conflict with the presumption of innocence.
 Sandstrom
, 442 U.S. at 523, 61 L. Ed. 2d at 50, 99 S. Ct. at 2459.

With respect to mandatory rebuttable presumptions, the Supreme Court at one time indicated that all such presumptions would be upheld as constitutional, so long as the presumed fact flowed beyond a reasonable doubt from the proven, predicate fact. See 
Allen
, 442 U.S. at 167, 60 L. Ed. 2d at 798, 99 S. Ct. at 2230; see also 
Hester
, 131 Ill. 2d at 99 (noting, though not relying upon, the reasonable doubt standard for mandatory presumptions set forth in 
Allen
); 
Housby
, 84 Ill. 2d at 420. However, after the 
Allen
 decision, the Supreme Court made it clear that mandatory rebuttable presumptions which shift the burden of persuasion are 
per se
 unconstitutional. The Supreme Court has reasoned that mandatory rebuttable presumptions which shift the burden of persuasion to the defendant are unconstitutional because they relieve the State of its burden to prove every element of a crime beyond a reasonable doubt. See 
Sandstrom
, 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459; see also 
Francis
, 471 U.S. at 314, 85 L. Ed. 2d at 353, 105 S. Ct. at 1971 (“[s]uch [mandatory] presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense”); 
Yates v. Evatt
, 500 U.S. 391, 401-02, 114 L. Ed. 2d 432, 447-48, 111 S. Ct. 1884, 1891-92 (1991); 
Carella v. California
, 491 U.S. 263, 265-66, 105 L. Ed. 2d 218, 221-22, 109 S. Ct. 2419, 2420-21 (1989) (
per curiam
); see also 
People v. Ziltz
, 98 Ill. 2d 38, 44 (1983); Weinstein's Federal Evidence §303.06(4)(a), at 303–29; N. Roth & S. Sundby, 
The Felony-Murder Rule: A Doctrine at Constitutional Crossroads
, 70 Cornell L. Rev. 446, 466-69 (1985) (“
Sandstrom
's
 
inescapable import is that both conclusive presumptions and mandatory presumptions shifting the burden of persuasion [are unconstitutional]”).

Neither this court nor the United States Supreme Court has ruled on the constitutionality of mandatory presumptions which place a burden of production on a defendant, but which do not place the burden of persuasion on him. See 
Francis
, 471 U.S. at 314 n.3, 85 L. Ed. 2d at 353 n.3, 105 S. Ct. at 1971 (“We are not required to decide in this case whether a mandatory presumption that shifts only a burden of production to the defendant is consistent with the Due Process Clause, and we express no opinion on that question”). However, the majority of commentators who have considered the question conclude that presumptions which impose a burden of production upon the defendant, like those that impose a burden of persuasion, are unconstitutional on their face. See, 
e.g.
, M. Graham, Cleary & Graham's Handbook of Illinois Evidence §304, at 118 (6th ed. 1994); M. Graham, 
Presumptions–More Than You Ever Wanted to Know and Yet Were Too Disinterested to Ask
, 17 Crim. L. Bull. 431, 441 (1981); Note, 
After Sandstrom: The Constitutionality of Presumptions That Shift the Burden of Production
, 1981 Wis. L. Rev. 519, 524, 545-54 (1981); 42 U. Miami L. Rev. at 1021. In addition, several states, following the example set forth in proposed Federal Rule of Evidence 303, have enacted rules of evidence which expressly prohibit the use of all mandatory presumptions in the criminal context, both those that shift the burden of persuasion and those that shift the burden of production. See, 
e.g.
, Neb. Rev. Stat. §27–303(2) (1997) (“The judge is not authorized to direct the jury to find a presumed fact against the accused”); Haw. Rev. Stat. §306(a) (1997); Or. Rev. Stat. §40.125 (1996); see also Weinstein's Federal Evidence §303, at 303–1 (discussing proposed Federal Rule of Evidence 303); G. Fenner, 
Presumptions: 350 Years of Confusion and It Has Come To This
, 25 Creighton L. Rev. 383, 402 (1992).

Using the example of a jury instruction, one court has explained the constitutional problems created by a mandatory presumption which shifts the burden of production to the defendant:

“Instructing a jury that under certain circumstances it 
must
 draw a particular inference infringes upon both the right to trial by jury on that element and the right to have the State prove every element of the charge beyond a reasonable doubt. [Citation.] Such an instruction is in reality just a polite form of a partial directed verdict, a procedural device which is 'abhorrent to the criminal law.' [Citations.] A mandatory presumption, even a mere production-shifting one, may also place undue pressure on a defendant to waive his right to remain silent. [Citation.]

*** When the defendant presents no evidence to rebut this presumption, the jury is 
required
 to find an element of the crime, effectively removing that issue from the jury's consideration. In addition, the State is relieved of its burden of proving the element in question beyond a reasonable doubt. Both of these consequences violate the defendant's constitutional rights.” (Emphasis in original.) 
Washington v. Johnson
, 100 Wash. 2d 607, 617, 674 P.2d 145, 151-52 (1983).

But see 
Davis v. Allsbrooks
, 778 F.2d 168, 173 (4th Cir. 1985) (holding that production-shifting presumptions are to be judged under same standard as permissive presumptions); 
Muller v. Wisconsin
, 94 Wis. 2d 450, 472, 289 N.W.2d 570, 583-84 (1980) (same).

We agree that in the area of criminal law, mandatory rebuttable presumptions which shift the burden of production to the defendant are unconstitutional. A production-shifting presumption places a burden on the defendant to come forward with a certain quantum of evidence to overcome the presumption. If the defendant does not satisfy that burden, the judge is required, in effect, to direct a verdict against the defendant on the element which is proved by the use of the presumption. This result conflicts with the longstanding rule that a verdict may not be constitutionally directed against a defendant in a criminal case. See, 
e.g.
, 
Sandstrom
, 442 U.S. at 516 n.5, 61 L. Ed. 2d at 46 n.5, 99 S. Ct. at 2455 n.5; 
United States v. Martin Linen Supply Co.
, 430 U.S. 564, 572-73, 51 L. Ed. 2d 642, 652, 97 S. Ct. 1349, 1355 (1977). In sum, we agree with the commentator who noted that, “[s]ince a verdict may not be directed against an accused, the burden of production with respect to an element of a crime *** may never be shifted to the defendant.” 17 Crim. L. Bull. at 441. Therefore, we hold that such a presumption violates the due process clause of the United States Constitution for the reasons discussed above. These same reasons lead us to hold separately that a mandatory production-shifting presumption also violates the due process clause of the Illinois Constitution.

II. The Presumption in This Case

The proper place to begin an inquiry into the constitutionality of a presumption is to determine the nature of the presumption. See, 
e.g.
, 
Francis
, 471 U.S. at 313-14, 85 L. Ed. 2d at 353, 105 S. Ct. at 1971. The State acknowledges that the first sentence of subsection (c) creates a mandatory, rebuttable presumption of intent once the predicate facts are established. Despite this fact, however, the State contends that defendant bears no burden under the statute. The State bases its argument on the penultimate sentence of subsection (c). This sentence states that “[i]ntent and knowledge shall be determined by an evaluation of all circumstances surrounding a transaction and the determination shall not be limited to the time of contract or agreement.” The State argues that this sentence means that the State is never relieved of the burden of production or persuasion.

We do not agree with this interpretation. The presumption's mandatory nature is clearly demonstrated by its mandate that “it 
shall 
be a rebuttable presumption.” (Emphasis added.) 815 ILCS 515/3(c) (West 1994). The penultimate sentence of subsection (c) does nothing to alter this mandatory language.

We believe that the penultimate sentence of subsection (c) is intended to assist a defendant by expanding the realm of relevant evidence which he may use to rebut the presumption. For example, if the State triggered the presumption by proving that a defendant had used an unqualified subcontractor, the defendant might attempt to rebut the presumption by introducing evidence of the subcontractor's satisfactory performance on prior projects. This would tend to show a good-faith belief on the defendant's part that the subcontractor was qualified and, therefore, that the defendant intended to perform the promised work. If subsection (c) did not include the penultimate sentence, the evidence might be considered irrelevant, because the ultimate issue is the defendant's intent at the time he entered the contract. However, by explicitly allowing the defendant to introduce evidence “not limited to the time of the contract,” the sentence would allow the introduction of the evidence in the example. This “intent and knowledge” provision of subsection (c), on which the State relies, does not change the fact that the burden shifts to the defendant: the provision operates only to assist the defendant in bearing that burden. Accordingly, we conclude that the presumption contained in subsection (c) is mandatory and, as such, is unconstitutional.

The State also argues that the scheme established for triggering a presumption under the Act is different from those found unconstitutional by the Supreme Court in such cases as 
Francis 
and 
Sandstrom
. The State points out that under the Act, the basic facts (those that, if proven, give rise to the presumption) are wholly separate from the nonintent elements of the crime, while in 
Francis
 and 
Sandstrom
, the facts necessary to raise the presumption were already part of the prosecution's 
prima facie 
case. For example, in 
Francis
, the defendant was convicted of “malice murder,” the elements of which were causing the death of another person with malice aforethought. The jury was instructed that “[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but that presumption may be rebutted,” and that “[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.” 
Francis
, 471 U.S. at 311-12, 85 L. Ed. 2d at 351-52, 105 S. Ct. at 1969-70. Thus, the facts necessary to prove one element of the crime (the causing the death of another person) were the same facts necessary to give rise to the presumption of malice. Similarly, in 
Sandstrom
, the defendant was convicted of deliberate homicide, the elements of which were causing the death of another person, while acting purposely or knowingly. The jury was instructed that “ `[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' ” 
Sandstrom
, 442 U.S. at 513, 61 L. Ed. 2d at 44, 99 S. Ct. at 2453. Thus, the element of intent was presumed upon proof of the other element of the crime, that is, of causing the death of another person. In the case at bar, however, the basic facts which must be proved in order to trigger the presumption, such as that the defendant had failed to hire qualified personnel, are not part of any other element of the offense.

The distinction which the State notes between 
Francis
 and 
Sandstrom
 and the instant case, while accurate, is irrelevant. The presumption in subsection (c) allows the State to avoid proving intent by proving other issues. The defendant is then required to bear some burden (either the burden of production or the burden of persuasion) to rebut the presumption. If the defendant fails to carry this burden, the trier of fact is 
required 
to find that the defendant did not intend to do the promised work, even if the State has offered no evidence that directly shows such an intent. We have held that such burden-shifting violates the due process clause. The source of the predicate facts for the presumption, 
i.e.
, whether or not they are already an element of the crime, is constitutionally insignificant.

III. Severability

Having determined that the presumption portion of the Act is unconstitutional, we must determine whether this portion of the statute is severable from the rest of the Act. The statute does not contain a specific severability provision. Nevertheless, under the general severability statute (5 ILCS 70/1.31 (West 1996)), as well as the prior decisions of this court (see, 
e.g.
, 
People v. Warren
, 173 Ill. 2d 348, 371 (1996)), severability may still be appropriate.

Generally, severability is a question of legislative intent. 
Warren
, 173 Ill. 2d at 371. The test for determining whether severance is possible, as articulated in 
Fiorito v. Jones
, 39 Ill. 2d 531, 540-41 (1968), and recently repeated in 
Warren
, 173 Ill. 2d at 371-72, is

“ `whether the valid and invalid provisions of the Act are “so mutually `connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole ***.' ” [Citation.] The provisions are not severable if “they are essentially and inseparably connected in substance.” [Citation.]' ” 
Warren
, 173 Ill. 2d at 371-72, quoting 
Fiorito
, 39 Ill. 2d at 540.

In addition to this test, we also consider whether the legislature would have passed the valid portions of the statute without the invalid portions. 
Warren
, 173 Ill. 2d at 372. If not, then the whole statute must be stricken.

With these considerations in mind, we hold that the presumption provision can be severed from the rest of the Act. The General Assembly originally passed the statute without the presumption provision. See Ill. Rev. Stat. 1987, ch. 121½, par. 1603. The presumption was added six years later. See 815 ILCS 515/3(c) (West 1992). Therefore, we believe that the General Assembly would prefer to leave the remaining portions of the statute in effect without the presumption, rather than have the entire statute stricken. Moreover, the remainder of the Act may operate without the presumption provision, because the presumption provision operates only to ease the State's burden of prosecution under the Act. Therefore, while we strike subsection (c) of the statute, the remainder of the statute remains intact and valid.

IV. Collateral Estoppel

The last issue for our consideration is whether defendant may be retried on the home repair fraud count without the use of the presumption. “The doctrine [of collateral estoppel] bars relitigation of factual issues which have necessarily been decided in a former proceeding between the same parties.” 
People v. Scott
, 148 Ill. 2d 479, 555 (1992). At trial, the circuit court found that the State had not met its burden of proving that the defendant did not intend to perform when he entered into the contract and, as a result, acquitted defendant on the theft count. Because we have invalidated the presumption contained in subsection (c), a court in a retrial under the Act would be left to determine the issue of defendant's intent precisely as it was decided under the theft count at the original trial. Since this issue has been decided once, it may not be relitigated.

CONCLUSION

For the reasons stated above, the judgment of the appellate court is affirmed.

Affirmed.

JUSTICE MILLER, specially concurring:

I join in the judgment of the court and the analysis of the federal constitutional issue. Because the case is decided on federal constitutional grounds, there is no need for us to consider here whether the Illinois Constitution independently requires the same result. Accordingly, I do not join the brief discussion in the majority opinion regarding a state constitutional basis for our decision in this case. Slip op. at 11.