Docket No. 99895.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CHRISTOPHER JORDAN, Appellee.

*Opinion filed January 20, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Fitzgerald, Kilbride, and Garman concurred in the judgment and opinion.

## OPINION

Defendant, Christopher Jordan, was charged in the circuit court of Cook County with endangering the life and health of a child in violation of section 12–21.6 of the Criminal Code of 1961 (the Code) (720 ILCS 5/12–21.6 (West 2002)). Following a bench trial, defendant was found guilty and was placed on three months' court supervision. He appealed, arguing that (1) the State failed to meet its burden of proving that the child's life or health was endangered by his actions and (2) the child endangerment statute under which he was convicted is unconstitutional. The appellate court held that the statute contained an unconstitutional presumption, which was severable, and the State's evidence was otherwise insufficient to prove defendant guilty beyond a reasonable doubt. Consequently, the appellate court

reversed the judgment of the circuit court. 354 Ill. App. 3d 294. We allowed the State's petition for leave to appeal. 134 Ill. 2d R. 317.

## STATUTE INVOLVED

Section 12–21.6 of the Code provides as follows:

"(a) It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health, except that it is not unlawful for a person to relinquish a child in accordance with the Abandoned Newborn Infant Protection Act.

(b) There is a rebuttable presumption that a person committed the offense if he or she left a child 6 years of age or younger unattended in a motor vehicle for more than 10 minutes." 720 ILCS 5/12–21.6(a), (b) (West 2002).

## BACKGROUND

The complaint, as originally filed in this case, charged that the defendant committed the offense of endangering the life or health of a child in that he "knowingly and without legal justification left his child *** unattended in a motor vehicle with an outside temperature of 22° and a windchill of 12° for approximately one hour." On the day of defendant's bench trial, the State was granted leave to amend the complaint, striking that portion of the charge relating to weather conditions, and rephrasing the pertinent portion of the charge to state that defendant "willfully caused or permitted the life or health" of his child "to be endangered by leaving the child unattended in a vehicle for over ten minutes." Defendant did not object to the amendment. The complaint, in its original and amended form, alleged that defendant violated subsection (a) of section 12–21.6 of the Code.

Defendant was tried before the court on June 27, 2003. At trial, Reuben Tate testified that he was the supervisor of security at Truman College on February 5, 2003. On that date, in response to a report he received, Tate proceeded to a parking lot on the campus where, after approximately 10 minutes of searching, he located an infant left alone in a vehicle. The infant was crying. Tate estimated

˘2˘

that the infant was less than four months old. The outside air temperature was "around the twenties."

Tate could not get into the car because the doors were locked and the windows were shut, so he directed his staff to call the fire department. Fire department personnel arrived approximately 10 minutes after he first located the child, and two police cars arrived approximately 10 minutes after the arrival of the fire truck. After the firefighters opened the car door, they removed the infant, and took her to an ambulance, where her vital signs were checked. Tate stated that it was approximately 30 minutes or more between the time he arrived at the vehicle and the time fire department personnel removed the infant. Defendant did not appear on the scene until after the child had been removed to the ambulance.

Under cross-examination, Tate admitted he had estimated response times. Because the baby was crying, his attention was focused on the baby. He said the infant was located in a vehicle in the back of the main student parking lot, between 200 and 400 feet from the entrance to the school. The child was dressed in a winter coat, gloves, and a hat, and was covered with a blanket. Tate conceded he had no information regarding the air temperature inside the vehicle. Though the baby was crying, to his knowledge, the baby was unharmed.

On redirect, the following colloquy occurred between the prosecutor and Tate:

"Q. You know the child was left alone for 35 to 40 minutes because that's what you told the media news *** ?

A. Right.

Q. You don't know how long the child was left alone before you got there?

A. That's correct.

Q. You were there at least ten minutes?

A. Yes.

Q. You know the child was left for over ten minutes because you were there for over ten minutes?

A. That's correct."

Officer Robert Hightower testified that he was on duty on February 5, 2003, and on that date, he responded to a call at Truman

College. The call concerned a child left alone in a motor vehicle. Hightower estimated his response time at 10 minutes. When he arrived, fire department personnel were already on the scene, and the four-month-old infant was still in the vehicle. It was "very cold" that day. Hightower testified that it took the fire department six to eight minutes to get the baby out of the car after his arrival. Shortly after the infant was moved to an ambulance, defendant approached and identified himself as her father. Defendant said he had only been away from the car for five minutes. Hightower stated that he had been on the scene at least 12 minutes prior to defendant's arrival.

Under cross-examination, Hightower described the parking lot where the vehicle was located as "huge," and he noted that the car was parked "very far away" from the school. Defense counsel asked Hightower, "You don't know what the temperature inside of the vehicle was, do you?" Hightower responded, "I have no idea. It's cold enough to see your breath." Defense counsel then moved on to another line of inquiry.

Defendant testified that he was a student at Truman College on February 5, 2003, and he went there after 2 p.m. that day to get a textbook at the college bookstore. According to defendant, he had just come from his house, and his infant daughter was sleeping, so he decided to leave her in his vehicle while he went into the school. Defendant said his daughter was dressed in a "full body jumpsuit[,] a hood, gloves," and she was covered with "a very thick wool blanket," with a small sheet under the blanket. Defendant described the weather as windy, but "not cold." Defendant said he parked approximately one-half block from the door of the school. He described the area where he parked as "the front of the main parking lot." Defendant admitted it was a "pretty big lot." According to defendant, it took him about three minutes to get from his vehicle to the bookstore, which was closed, and another three minutes to get back to his car. When he returned, his daughter had just been taken out of his vehicle.

Under cross-examination the prosecutor asked defendant to indicate the distance he walked to the entrance of the school and repeatedly requested that he estimate the time it would have taken him to walk that distance. From the record, it appears that defendant estimated the distance involved as a little longer than the length of the courtroom.

˘4˘

In closing argument, the prosecutor argued, primarily, the rebuttable presumption of subsection (b) of section 12–21.6, focusing on the time period during which the child was left alone in the defendant's vehicle. However, the prosecutor also touched briefly on the weather conditions on the day of the incident. Defense counsel offered his own time calculation–based upon a report which Hightower testified was erroneous–that the child had been alone in the car at most 20 minutes. Although defense counsel also focused on the time element in his argument, he noted that the infant was dressed warmly and there was no testimony that the child had suffered harm from defendant's conduct. Counsel concluded: "This is a stupid act, yes, not a criminal act."

Prior to announcing its decision, the trial court summarized the testimony of each witness, focusing primarily upon the timing of events, but also mentioning the weather conditions on the day of the offense alleged, the distance between defendant's parked vehicle and the school entrance, and the location of the vehicle in the parking lot. The trial court concluded, simply: "I don't believe [defendant] was quite honest with this court. There is a finding of guilty."

As previously noted, the trial court placed defendant on three months' court supervision. Defendant filed a timely notice of appeal on July 25, 2003. A computer printout in the common law record suggests that the circuit court discharged defendant's supervision on April 12, 2004.

The appellate court filed its decision in this matter on December 8, 2004. 354 Ill. App. 3d 294. Relying principally upon our decision in *People v. Pomykala*, 203 Ill. 2d 198 (2003), the appellate court held that the rebuttable presumption set forth in subsection (b) of section 12–21.6 is a mandatory presumption and is thus unconstitutional. 354 Ill. App. 3d at 297-300. The court found subsection (b) severable from the remainder of the statute (354 Ill. App. 3d at 300), and went on to consider defendant's argument that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt, ultimately concluding that the evidence was in fact inadequate to support a finding of guilt. 354 Ill. App. 3d at 301.

## ANALYSIS

As a threshold matter, we consider an issue raised for the first time during oral argument: whether this appeal is moot because the

circuit court apparently discharged defendant's supervision prior to filing of the appellate court's judgment. Both parties have filed supplemental briefs addressing this issue, and both maintain that the case is not moot. We agree.

There is no question that nullification of a *conviction* may have important consequences to a defendant, whether or not his attendant sentence has been served. In such circumstances, "the probability that a criminal defendant may suffer collateral legal consequences from a sentence already served precludes a finding of mootness." *People v. Jones*, 215 Ill. 2d 261, 267 (2005) (entertaining defendant's appeal even though defendant might have "already served his sentence of one year of conditional discharge").

While "[d]ischarge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime" (730 ILCS 5/5–6–3.1(f) (West 2002)), there are nonetheless important consequences associated with a disposition of court supervision. For example, this court has held that charges resulting in dispositions of supervision may be treated as prior committed offenses for purposes of imposing subsequent penalties. See *People v. Sheehan*, 168 Ill. 2d 298, 308-09 (1995) ("We do not believe that using an offense that resulted in *** supervision to enhance a subsequent charge is inconsistent with the 'without adjudication of guilt' provision of the supervision statute. *** [T]he use of a prior DUI violation resulting in supervision as an enhancing offense in subsequent felony DUI proceedings is not a 'disqualification or disability imposed by law' and thus does not offend that portion of the supervision statute"); *People v. Johnson*, 128 Ill. 2d 253, 286-87 (1989) (order of supervision may be used as evidence in aggravation when imposing punishment for later conviction). Like the DUI statute in *Sheehan*, the child endangerment statute speaks in terms of "violations," rather than "convictions," and provides for an enhanced penalty upon commission a second or subsequent "violation" of the statute. See 720 ILCS 5/12–21.6(d) (West 2002). Applying the reasoning of *Sheehan* to the circumstances of this case, this defendant would be subject to felony sentencing if he were ever to violate the child endangerment statute in the future. Sentence enhancement would be appropriate even though the disposition of supervision was

"without adjudication of guilt" and defendant was never "convicted" of this offense "for purposes of disqualification or disabilities imposed by law." Pursuant to this court's holding in *Johnson*, the disposition of supervision could be used later as aggravating evidence in sentencing for *any* subsequent offense. We note in passing, without expressing either approval or disapproval, that recent appellate decisions have upheld the adverse consideration of dispositions of supervision in employment decisions. See *Beard v. Sprint Spectrum, LP*, 359 Ill. App. 3d 315, 319-20 (2005); *cf. Sroga v. Personnel Board*, 359 Ill. App. 3d 107, 111-14 (2005).

Clearly, a defendant subject to an order of supervision may suffer collateral legal consequences as a result of that disposition. Thus, we conclude this appeal is not moot.

Turning to the merits, we first address the constitutional question, though it appears the parties now agree there *is* no genuine issue of the statute's constitutionality. In its briefing of this matter, the State virtually conceded that the statutory presumption of subsection (b) is an unconstitutional mandatory rebuttable presumption, as defendant contends. In oral argument before this court, counsel for the State explicitly conceded the point. Again, we agree with the parties. We will briefly explain why.

Although the State is constitutionally required to prove every element of a crime beyond a reasonable doubt (*Jackson v. Virginia*, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2787 (1979)), the State may nonetheless rely upon certain presumptions and inferences to prove its case. *Pomykala*, 203 Ill. 2d at 202; *People v. Hester*, 131 Ill. 2d 91, 98 (1989). Presumptions may be either permissive or mandatory. A permissive presumption allows, but does not require, the fact finder to infer the existence of the ultimate or presumed fact upon proof of the predicate fact, without placing any burden on defendant. *Pomykala*, 203 Ill. 2d at 203; *People v. Watts*, 181 Ill. 2d 133, 141-42 (1998). A mandatory presumption requires the fact finder to accept the presumption. *Pomykala*, 203 Ill. 2d at 203; *Watts*, 181 Ill. 2d at 142.

Mandatory presumptions may be further classified as conclusive (irrebuttable) or rebuttable. *Pomykala*, 203 Ill. 2d at 203; *Watts*, 181 Ill. 2d at 142. The United States Supreme Court has long held that mandatory conclusive presumptions are unconstitutional because they

conflict with the presumption of innocence accorded a criminal defendant. See *Sandstrom v. Montana*, 442 U.S. 510, 521-23, 61 L. Ed. 2d 39, 49-51, 99 S. Ct. 2450, 2458-59 (1979). The Supreme Court has also held that mandatory rebuttable presumptions which shift the burden of *persuasion* to the defendant are *per se* unconstitutional because they relieve the State of its burden of proving every element of the offense beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459. This court has held that a mandatory rebuttable presumption that shifts the burden of *production* to a criminal defendant is also unconstitutional because such a presumption could, in effect, require a trial judge "to direct a verdict against the defendant on the element which is proved by the use of the presumption." *Watts*, 181 Ill. 2d at 147. Thus, under Illinois law, "all mandatory presumptions are now considered to be *per se* unconstitutional." *Pomykala*, 203 Ill. 2d at 204.

The statute at issue in this case provides: "*There is a rebuttable presumption* that a person committed the offense [of child endangerment] if he or she left a child 6 years of age or younger unattended in a motor vehicle for more than 10 minutes." (Emphasis added.) 720 ILCS 5/12–21.6(b) (West 2002). In *Watts*, this court stated that a "presumption's mandatory nature [was] clearly demonstrated by its mandate that 'it *shall* be a rebuttable presumption.' " (Emphasis in original.) *Watts*, 181 Ill. 2d at 148, quoting 815 ILCS 515/3(c) (West 1994). In this context, we see no significant difference in the phrases "there is" and "it shall be." In each instance, the legislature's intent to mandate application of a rebuttable presumption is unmistakable. The State admits that the phraseology of the statutory presumption in this case is "almost identical" to that used in the statute struck down in *Watts.* Neither statute contains permissive language. We see no significant difference between the language of this statutory presumption and the one this court held unconstitutional in *Watts.* We hold that subsection (b) of section 12–21.6 of the Code creates an unconstitutional mandatory rebuttable presumption.

We find, however, that subsection (b) is severable from the remainder of the statute. A statutory provision containing an unconstitutional presumption may be severed from the rest of the statute when what remains is complete in itself and is capable of

being executed wholly independently of the severed portion. *Pomykala*, 203 Ill. 2d at 209. Provisions are not severable if they are essentially and inseparably connected in substance, such that the legislature would not have passed the valid portions of the statute absent the invalid portion. *Watts*, 181 Ill. 2d at 151.

As the State notes, subsection (a) of the current version of the child endangerment statute contains all of the elements of the offense, making it complete in itself and capable of being executed independently of subsection (b). The legislature originally enacted the child endangerment statute without the presumption in subsection (b). Indeed, a form of the child endangerment statute was enacted in 1877 (1877 Ill. Laws 91, §4), and it has existed ever since in some form (see generally Ill. Rev. Stat. 1959, ch. 38, par. 95; 720 ILCS 150/4 (West 1992)), without any attendant presumption. When the current version of the statute was enacted in 1993 as section 12–21.6 of the Criminal Code, the statute contained only the elements of the offense, now set forth in subsection (a), and the statutory classification of the offense, in what is now subsection (d). See 720 ILCS 5/12–21.6 (West 1994). Subsection (b), containing the statutory presumption, and subsection (c), defining "unattended" as used in subsection (b), were not added to section 12–21.6 until the passage of Public Act 92–515. Those amendments to the section 12–21.6 took effect June 1, 2002. Thus, the offense of child endangerment existed in its current form for over eight years without the presumption. It existed in some form for well over a century without the presumption. In *Watts*, this court found it compelling that the General Assembly had originally passed the statute defining the offense at issue in that case without a presumption, and only added the statutory presumption six years later. *Watts*, 181 Ill. 2d at 151. In *Watts*, this court struck the presumption of the statute, and left the remainder of the statute intact and valid. *Watts*, 181 Ill. 2d at 151. We reach the same result in this case.

Finally, we consider the consequences of the presumption's invalidity in this case. After holding the statutory presumption unconstitutional, the appellate court summarized the trial evidence and found it insufficient to "convict defendant of endangering the life of a child under subsection (a)." 354 Ill. App. 3d at 301. The appellate court reversed the judgment of the trial court outright. 354 Ill. App. 3d at 301. We disagree with the appellate court's assessment of the

evidence, and its disposition of this matter.

First, we address the State's contention that the presumption was not applied in this case because the trial court did not mention it. On this record, we simply cannot say that the presumption was *not* a factor in the circuit court's decision. The complaint in this case charged defendant with endangering the life or health of his child by leaving her unattended in a vehicle for over 10 minutes. Because of the statutory presumption–which everyone assumed was constitutional in the absence of case authority to the contrary–the parties obviously focused their efforts on marshaling and presenting evidence pertinent to the presumption, or refuting such evidence, depending upon their interests. Their closing arguments also acknowledged the presumption. There was then no case authority holding the statutory presumption unconstitutional, and the State took pains to tailor the complaint to the language of the presumption. Accordingly, there is no reason to believe that the circuit court ignored the parties arguments, and evidence adduced relative to the presumption, and there is no reason to believe that the court did *not* apply the *mandatory* presumption, if in fact the court believed that defendant had left his child unattended in the vehicle for more than 10 minutes. We must presume that a trial judge knows and follows the law unless the record demonstrates otherwise. See *People v. Blair*, 215 Ill. 2d 427, 449 (2005).

Moreover, although we can safely assume that the circuit court's assessment of credibility played some part in the court's decision, it is impossible to tell from the record whether the trial court discounted all of defendant's testimony, or only part of it, when the court stated it did not believe defendant "was quite honest with this court." The court did not explain in what respect defendant was not "quite honest," nor did the court render an assessment of the credibility of any other witness. Only the trial judge heard the witnesses testify and observed their demeanor during the trial. Circuit courts are in a superior position to determine and weigh the credibility of witnesses, observe their demeanor, and resolve conflicts in their testimony. *Jones*, 215 Ill. 2d at 268. Because the trial court did not explain in what respect it found defendant's testimony less than credible, we cannot tell whether that assessment relates to the unconstitutional presumption or some independent and proper aspect of the case.

With these preliminary observations, we next address the appellate court's determination, and the defendant's contention, that the evidence adduced at trial was insufficient to establish defendant's guilt beyond a reasonable doubt. In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Normand*, 215 Ill. 2d 539, 549 (2005). That standard applies in all criminal cases, regardless of the nature of the evidence. *People v. Phillips*, 215 Ill. 2d 554, 569-70 (2005). Examining the trial evidence in the light most favorable to the State, we believe a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

A person violates the child endangerment statute when he or she "willfully cause[s] or permit[s] the life or health of a child *** to be endangered or *** willfully cause[s] or permit[s] a child to be placed in circumstances that endanger the child's life or health." 720 ILCS 5/12–21.6(a) (West 2002). Willful conduct is synonymous with knowing conduct. "Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4–5(b) (West 2002). Thus, the State was required to prove that defendant knew he was endangering the life or health of his child when he left her alone in his vehicle that day. In *People v. Collins*, 214 Ill. 2d 206, 215 (2005), this court stated, "by its plain meaning, the term ['endanger'] refers to a potential or possibility of injury. The term does not refer to conduct that will result or actually results in harm, but rather to conduct that could or might result in harm."

Applying these definitions in this context, we believe that a rational trier of fact could have found that defendant knowingly endangered his infant daughter's life or health by leaving her unattended in his vehicle. Several factors bear upon that determination including the setting where the vehicle was parked, the weather conditions, and the amount of time defendant left his daughter alone in the vehicle.

Testimony indicated that the child may have been left in the defendant's Jeep for as long as 40 minutes on a windy day when the

outside air temperature was in the twenties. Officer Hightower admitted he did not know what the temperature was inside defendant's vehicle, but he said it was "cold enough to see your breath." A rational trier of fact might well have found that, after 40 minutes in a parked vehicle with no source of heat, the health of defendant's four-month-old infant daughter was endangered by the cold temperatures of that day, no matter how warmly she was dressed.

Weather conditions aside, it is an unfortunate fact of modern urban life that the more populated the area, the greater the likelihood that some ill will befall a young child who is left unattended in a public place. A young child unattended in a public setting is easy prey for social predators who may happen by. Legal reporters in our law libraries are rife with tragic examples confirming this observation. The danger is no less real because the actual occurrence of such an incident is a random event. Our decision in *Collins* illustrates the point. In *Collins*, we held that the discharge of a firearm into the air endangered those on the ground in the vicinity of the discharge:

> "The inherent danger caused by the reckless discharge of a firearm into the air, and the obvious ricochet effect that may occur when the bullets fall to the ground, are matters of common sense. In this case, what inevitably came down endangered *** those in the vicinity of the discharge." *Collins*, 214 Ill. 2d at 218.

As a practical matter, the likelihood that a specific individual will be struck by a bullet falling to the ground may not be that great; however, we accept the existence of that danger as a matter of "common sense." So too, leaving a child unattended in a public place exposes the child to the danger posed by those in our society who may harm the child. We believe that too is a matter of common sense. It should also be obvious that the more populated the environment , and the longer the time the child is left alone, the greater the exposure to that danger.

In this case, the witnesses all testified that the parking lot in question was a public lot adjacent to the college. Defendant himself described the location as a "pretty big lot." It follows that there would be a significant number of people in the general vicinity of the

unattended child. Given the circumstances, we believe a rational trier of fact might well have found that defendant knowingly endangered his daughter by leaving her unattended for as long as 40 minutes in a public place, thus exposing her to unacceptable risks of harm from passersby.

In sum, we find that a rational trier of fact could have found that defendant knowingly endangered his infant daughter's life or health by leaving her unattended in his vehicle, taking into account the setting where defendant's vehicle was parked, the weather conditions, and the amount of time defendant left his daughter alone in the vehicle. We emphasize that the foregoing examination of the evidence was conducted in response to defendant's reasonable doubt argument; therefore, we have reviewed the evidence in the light most favorable to the State, and without taking into account the probable effect of the procedural error represented by the court's consideration of the statutory presumption.

On this record, we cannot say that use of the presumption in this case was harmless error. In *Pomykala*, under similar circumstances, this court rejected a harmless error argument, after finding a statutory presumption unconstitutional, and remanded the cause for a new trial.

In *Pomykala*, as in this case, the State endeavored to tailor the wording of the complaint to the language of the presumption, a mandatory presumption that was assumed to be constitutional at the time of trial, but was ultimately found unconstitutional. That presumption was set forth in section 9–3(b) of the Criminal Code, which provided as follows: "In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary." See 720 ILCS 5/9–3(b) (West 2000). In *Pomykala*, the State charged defendant with two counts of reckless homicide. Count I alleged that defendant drove his vehicle in a reckless manner at a time when his blood-alcohol concentration was greater than 0.08. Count II alleged that defendant drove his vehicle in a reckless manner while under the influence of alcohol.

At Pomykala's trial, the jury heard evidence of his intoxication and of his actions while driving his vehicle. The jury also heard evidence that defendant's brakes may have malfunctioned at the time

of the accident. Further, the record contained evidence of defendant's knowledge that his brakes did not work properly all the time. The jury was instructed that it was required to presume recklessness if the State proved that defendant was under the influence of alcohol at the time of his actions. That evidence was thus emphasized to the jury over other evidence presented during the trial. The jury convicted defendant on both counts of reckless homicide. Under those circumstances, this court was unable to find that the error in instructing the jury on the statutory presumption was harmless error. We implicitly found that the evidence adduced at trial might have sustained a conviction independently. See *Pomykala*, 203 Ill. 2d at 210-11. This court affirmed the appellate court's reversal of defendant's conviction and remandment of the cause to the circuit court for a new trial. *Pomykala*, 203 Ill. 2d at 211.

We believe the same disposition is appropriate in this case. There is no doubt that the statutory presumption played a prominent, perhaps determinative, part in the trial of this case. Although we find that there was evidence sufficient to support a finding of guilt, independent of the presumption, from this record, we are unable to ascertain the extent to which the witnesses' credibility figured into the circuit court's ruling. Determinations of the credibility of witnesses and the weight to be given to their testimony are responsibilities that must be left to the trier of fact. *People v. Williams*, 182 Ill. 2d 171, 192 (1998). Reversal for trial error is a determination that a defendant has been convicted by means of a judicial process defective in some fundamental respect *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Use of a mandatory presumption in a criminal case is such a defect in that it impermissibly shifts the burden of proof. Since we have found that the evidence was sufficient to support a finding of guilt, retrial of defendant would not constitute double jeopardy. See *People v. Placek*, 184 Ill. 2d 370, 390-91 (1998); *Williams*, 182 Ill. 2d at 192-93. We draw no conclusion as to guilt that would be binding upon retrial.[1] See *People v. Roberts*, 214

---

[1]Since defendant has apparently completed his term of supervision, we assume that the charges against him have been dismissed. See 730 ILCS 5/5–6–3.1(e) (West 2002) (where a "defendant has successfully complied with all the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges"). Upon remand, the

Ill. 2d 106, 126 (2005).

## CONCLUSION

For the reasons set forth herein, the judgment of the appellate court is affirmed in part and reversed in part, and this cause is remanded to the circuit court for a new trial.

*Affirmed in part and reversed in part;*
*cause remanded.*

---

charges will be reinstated solely for purposes of trial. They will be dismissed after the trier of fact has made its finding on the issue of guilt. Irrespective of the outcome of trial, defendant will not be subject to further sentencing procedures.