2019 IL App (1st) 180735-U

No. 1-18-0735

Order filed November 8, 2019

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 7352 |
| | ) | |
| KATHERINE MOORE, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for arson is affirmed where a rational trier of fact could have found that the testimony of the victim who identified her as the offender was not unworthy of belief.

¶ 2    Following a bench trial, defendant Katherine Moore was found guilty of arson and criminal damage to property. The trial court merged the criminal damage to property count into the arson count, sentenced defendant to two months' probation for arson, and ordered her to pay a total of $1200 in restitution. Defendant appeals, arguing that the evidence was insufficient

because the victim's testimony implicating her as the offender was "inherently unbelievable." We affirm.

¶ 3    Defendant was charged by information with arson (720 ILCS 5/20-1(a) (West 2016)) and criminal damage to property (720 ILCS 5/21-1(a)(1) (West Supp. 2015)) based on an incident in which she was alleged to have set fire to a vehicle belonging to Jasmine Campbell, the sister of defendant's ex-boyfriend, George Campbell.[1]

¶ 4    At trial, Jasmine testified that she was convicted of forgery in 2009 and received two years' probation. Jasmine knew defendant, whom she identified in court, because defendant lived with Jasmine and George while the couple was dating in the "early months" of 2016. In January or February 2016, Jasmine purchased a Lincoln Navigator for $2300. On April 22, 2016, after George and defendant had broken up, Jasmine went outside to walk her dog at approximately 1 a.m. At that time, her Navigator was parked beneath a streetlight in front of her house.

¶ 5    As Jasmine was "[a] couple houses away" on her return home, she saw defendant and another woman standing near the gas tank on the driver's side of the Navigator. Jasmine approached the women and asked them, "What the f*** are you doing." As Jasmine got closer, she saw the "flickering of a lighter" in defendant's hand and flames coming from the gas tank.

¶ 6    Jasmine "sicked" her dog at the women and ran toward them. However, they entered a black minivan that was parked in the street next to the Navigator and drove away. Defendant was laughing as she entered the van. Jasmine testified that she recognized the van as defendant's because she had previously seen defendant driving the vehicle and noticed the last four digits of its temporary license plate as it drove away.

---

[1] Because Jasmine and George share a surname, we will refer to them by their first names.

¶ 7    Once the offenders left, Jasmine extinguished the flames with water from her house. She then called the police, who arrived shortly thereafter. Jasmine examined her vehicle and discovered burns on the gas tank and surrounding area. She identified photographs of the damage, which the State introduced into evidence. She later paid approximately $3000 in repair costs.

¶ 8    On cross-examination, Jasmine denied any previous "altercations" with defendant. She did not speak to George on the night before the fire and did not know whether he broke into defendant's apartment. On redirect examination, Jasmine stated that she did not learn that defendant had accused George of breaking into her home until the day of defendant's trial in the present case.

¶ 9    Chicago police detective Jeong Park testified that he traveled to Jasmine's address and examined the Navigator, which was adequately illuminated by street lamps. Park noticed that the gas cap had been removed and that a "paper product" had been stuffed into the opening of the gas tank. The paper had ignited and caused fire damage to the "gas cap area and the body of the vehicle." Park photographed the damage and recovered the paper as evidence. He determined that the origin of the fire was an open flame held to the paper.

¶ 10    Park also interviewed Jasmine, who named defendant as the perpetrator. Park searched defendant's name in a database and discovered that she had reported a burglary two or three hours before the fire. He created an investigative alert, and defendant was arrested several days later.

¶ 11    On cross-examination, Park testified that he did not see defendant at the scene or discover her fingerprints on the Navigator.

¶ 12    The State rested, and defense counsel sought to introduce a certified copy of Jasmine's forgery conviction. However, the court ruled that a certified copy was unnecessary because Jasmine had already "admitted to it." Defense counsel then moved for a directed finding on the criminal damage to property charge, which the court denied.

¶ 13    Defendant testified that she returned home between 9 and 10 p.m. on the night before the fire and found "trash all over the place." She immediately called the police, and noticed that some of her property was missing. While defendant was waiting for the police to arrive, she discovered George's identification card (ID), which was not there when she left her apartment. The couple had broken up approximately two months prior.

¶ 14    When an officer arrived, defendant reported the missing items and gave him George's ID. Defendant also asked the officer to "send somebody out to dust for fingerprints," and he agreed to do so. After the officer left, defendant called George to inform him that she had filed a police report against him. Defendant did not leave her apartment until after the time of the fire because she was waiting for an evidence technician to arrive. She denied having any problem with Jasmine or attempting to set her vehicle on fire.

¶ 15    On cross-examination, defendant acknowledged owning a black minivan with temporary license plates at the time of the fire. She also acknowledged that she did not return any of the phone calls from the detective who was assigned to investigate the burglary. The detective came to defendant's apartment while she was not home, but defendant did not follow up with the detective.

¶ 16    Chicago police officer Salvador Mondragon testified that he arrived at defendant's apartment, which was "a little messy," at around 10 p.m. on the night before the fire. Defendant

handed him George's ID and told him that she suspected George was the burglar. Mondragon told defendant that there was a "possibility" that an evidence technician would come to process the scene. Mondragon then left and returned to the police station.

¶ 17    On cross-examination, Mondragon estimated that he was at defendant's apartment for 20 to 30 minutes. He explained that defendant was initially unable to produce George's ID, but came outside with it as he was returning to his vehicle to leave. He did not interview George or make an arrest for the burglary.

¶ 18    After arguments, the court found defendant guilty of arson and criminal damage to property. In so ruling, the court noted that the case amounted to "a question of credibility along with the additional factor of the motive why [defendant] would want to start [Jasmine's] car on fire." More specifically, the court stated that it credited Jasmine's testimony that she was unaware of the alleged burglary until long after the fire, and that defendant's motive for the arson "takes the case out of the situation where it's just she said, she said."

¶ 19    Defendant filed a motion for a new trial, arguing that she was not proven guilty beyond a reasonable doubt. The court denied the motion. Following a hearing, the court merged the criminal damage to property count into the arson count, sentenced defendant to two years' probation, and ordered her to pay Jasmine a total of $1200 in restitution.

¶ 20    On appeal, defendant argues that the State failed to prove her guilty of arson beyond a reasonable doubt because Jasmine's testimony was unbelievable.[2] In particular, defendant

---

[2] Defendant also argues that the evidence was insufficient to prove her guilty of criminal damage to property beyond a reasonable doubt. However, as the trial court did not enter a sentence on that count, there is no final judgment from which an appeal can be entertained. See *People v. Goodwin*, 2018 IL App (1st) 152045, ¶ 58.

contends that the court ignored certain "objective indicators" that Jasmine was not credible, and instead attributed a "speculative and unreasonable motive" to defendant.

¶ 21    When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. It is the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and decide which inferences to draw therefrom. *People v. Bradford*, 2016 IL 118674, ¶ 12. Notably, a reviewing court must not retry the defendant or substitute its own judgment for that of the trier of fact on matters of witness credibility and the weight of the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35. This is in part because, having seen and heard the witnesses testify, the trier of fact is in a superior position to assess their credibility. *People v. Jordan*, 218 Ill. 2d 255, 269 (2006). Thus, although not binding on a reviewing court, the trial court's determinations of witness credibility are entitled to great deference. *People v. Brown*, 2013 IL 114196, ¶ 21.

¶ 22    Moreover, the credible testimony of a single eyewitness is sufficient to sustain a conviction. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). When a case depends on an eyewitness's testimony, the reviewing court must determine whether any reasonable trier of fact could accept the testimony as true. *Gray*, 2017 IL 120958, ¶ 36. Under this standard, eyewitness testimony is insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). A conviction will not be reversed simply because the defendant contradicts the eyewitness's account or claims that the witness is not credible. *Siguenza-Brito*, 235 Ill. 2d at 228.

Instead, a conviction will be reversed only where it depends on testimony that is "improbable, unconvincing, and contrary to human experience" (*People v. Vasquez*, 233 Ill. App. 3d 517, 527 (1992)), or where the evidence is otherwise "so unreasonable, improbable, or unsatisfactory" that a reasonable doubt of the defendant's guilt remains (*People v. Newton*, 2018 IL 122958, ¶ 24).

¶ 23    Relevant here, in order to convict defendant of arson, the State was required to prove that she damaged personal property with a value of at least $150 by means of fire or explosives. 720 ILCS 5/20-1(a) (West 2016).

¶ 24    Defendant does not contest that Jasmine's vehicle was damaged as a result of arson, but argues only that the evidence did not prove her to be the perpetrator beyond a reasonable doubt because no rational trier of fact could have credited Jasmine's testimony. According to defendant, Jasmine's testimony was unbelievable because she had a previous forgery conviction, and because her account was "simply too good to be true" in that (1) she "happed to be outside" while defendant committed the offenses, and (2) defendant started the fire even after Jasmine confronted her. Defendant also contends that Jasmine's testimony that she "record[ed] the numbers of the license plate" on the offenders' vehicle was "not what would [be] expected from someone who *** already knew who committed the crime."

¶ 25    However, it was the trial court's role to determine the witnesses' credibility and resolve any conflicts in the testimony. We cannot say that the court's decision to credit Jasmine over defendant was wholly unreasonable. A witness's testimony is not rendered unbelievable solely because the witness is a convicted felon, even where, as here, the witness's conviction involved making false representations. See *People v. Walton*, 48 Ill. App. 3d 136, 161 (1977) (upholding a conviction based on the testimony of an "essential witness" who was serving a prison term for

forgery); see also *People v. Phillips*, 127 Ill. 2d 499, 510 (trier of fact is responsible for weighing the credibility of felons). Moreover, a rational trier of fact could find nothing unusual or contrary to human experience in Jasmine's testimony that she was walking her dog near her house or that defendant completed her crime and immediately fled upon being discovered. Additionally, we note that defendant misstates the testimony in suggesting that Jasmine "record[ed]" part of the getaway van's license plate. Rather, Jasmine testified that she merely recognized the last four digits of the license plate because she had seen defendant driving the van on previous occasions. In fact, Jasmine testified that she immediately extinguished the flames and then called the police. Thus, contrary to defendant's assertion, Jasmine's account of her actions after the fire was not inherently unworthy of belief and did not discredit her identification testimony.

¶ 26 Notwithstanding, defendant argues that it was unreasonable for the trial court to find that she had a motive for the arson while ignoring Jasmine's own motive to falsely implicate her. Initially, we note that "it is not necessary to establish motive in an arson case." *People v. Musitief*, 201 Ill. App. 3d 872, 877 (1990). In any event, we cannot say that it was unreasonable for the trial court to believe that defendant's testimony revealed a motive. Although defendant asserts that she had no quarrel with Jasmine, her testimony established that she believed Jasmine's brother George, who lived in the same house as Jasmine, had broken into her apartment just hours before the fire. This suggests that defendant had a motive to damage the Navigator, which was parked in the street in front of Jasmine's home.

¶ 27 Although defendant contends that her accusation against George also established Jasmine's motive to falsely accuse her of the arson, the trial court credited Jasmine's testimony that she was unaware of the alleged burglary at the time of the fire. As noted, the trial court was

not required to reject Jasmine's testimony simply because defendant claims it is not credible. *Siguenza-Brito*, 235 Ill. 2d at 228. Furthermore, despite defendant's speculation on appeal, there is no evidence that Jasmine blamed defendant in order to recoup the repair costs for her vehicle.

¶ 28    In sum, Jasmine's testimony was not so unbelievable that no rational trier of fact could have accepted it. Consequently, the State presented sufficient evidence to prove defendant's guilt beyond a reasonable doubt.

¶ 29    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 30    Affirmed.