2024 IL App (1st) 221862-U

FIFTH DIVISION
March 29, 2024

No. 1-22-1862

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. SE 650353 |
| | ) | |
| NADER ELASSAR, | ) | Honorable |
| | ) | Eric Michael Sauceda, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's reckless driving conviction is affirmed, where the trial evidence showed defendant's vehicle sped through a residential neighborhood on a street on which pedestrians were walking.

¶ 2   Following a bench trial, defendant Nader Elassar was found guilty of misdemeanor reckless driving and sentenced to six months of court supervision. On appeal, he argues the State failed to prove him guilty beyond a reasonable doubt, where the evidence did not show he drove with a willful and wanton disregard for the safety of others. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Elassar was charged by misdemeanor complaint with reckless driving (625 ILCS 5/11-503(a)(1) (West 2020)), premised on an incident on September 7, 2020, in which he drove a vehicle down a residential roadway at a "high rate of speed over the posted 25 mile per hour speed limit and almost [struck] pedestrians without slowing down."

¶ 5      At trial, Palatine police officer Tyler Gratz testified that on September 7, 2020, around 5:23 p.m., he was on duty in a marked police vehicle observing traffic at the intersection of Quentin Road and Lake Cook Road. Officer Gratz pulled out into traffic. A 1995 tan Honda Accord in front of him "began driving evasively" by increasing its speed, creating distance, turning southbound onto Quentin, and taking a sharp left onto Woodland Road into a neighborhood. Officer Gratz waited at the two adjacent exits of the "horseshoe" shaped neighborhood.

¶ 6      After a few moments, the vehicle drove back from Woodland onto Quentin. Officer Gratz drove behind the vehicle and attempted to get its license plate. The vehicle immediately increased its speed and took a sharp left onto west Center Road into a residential area. Officer Gratz followed the vehicle into the residential area. He knew Center Road was a single road leading to a dead end and watched the vehicle from a distance. Officer Gratz observed the vehicle drive to the dead end, make a U-turn, and drive past him in the opposite direction on the narrow roadway. Officer Gratz got the vehicle's license plate and identified Mr. Elassar in court as the vehicle's driver and sole occupant.

¶ 7      As the vehicle passed Officer Gratz, it immediately increased its speed down Center Road. Based on his training and experience, Officer Gratz estimated the vehicle increased its speed to a "minimum of 20 miles per hour over the [25-mile-per-hour] speed limit." He saw multiple people walking down that residential roadway, specifically, a couple and an elderly woman walking her

dog. The road was narrow and did not have sidewalks, so the pedestrians had to walk along the road. He observed the pedestrians step to the side out of the way of Mr. Elassar's vehicle. Officer Gratz lost sight of the vehicle since it was travelling at a "high rate of speed." Officer Gratz drove past the pedestrians on the side of the roadway and asked if they were okay. The pedestrians pointed in Mr. Elassar's direction. Officer Gratz never activated his emergency lights as he "felt that would endanger the public even more."

¶ 8      Officer Gratz ran the vehicle's license plate, learned the vehicle was registered to Mr. Elassar, and radioed to other units regarding the speeding vehicle. He was unable to locate Mr. Elassar's vehicle again that day. Six days later, Palatine police officer John Deluca conducted a traffic stop of Mr. Elassar in his vehicle. Officer Gratz was called to the scene, positively identified Mr. Elassar as the driver of the vehicle in the September 7, 2020, incident, and arrested him.

¶ 9      On cross-examination, Officer Gratz acknowledged that his police report did not mention that he asked the pedestrians whether they were okay or that they were pointing at the vehicle.

¶ 10     The trial court found Mr. Elassar guilty of reckless driving. The court observed that simply driving over the speed limit normally "wouldn't be enough for a reckless driving charge" and would warrant a speeding citation. However, it stated "that's not what we have here." The court found that Mr. Elassar's actions "rose to the level of willful and wanton disregard," as he sped and took multiple turns in and out of a residential area while there were pedestrians in the street who had to step out of the way to avoid his vehicle.

¶ 11     The trial court sentenced Mr. Elassar to 6 months' court supervision, a defensive driving course, and 30 hours of independent community service. Mr. Elassar now appeals.

¶ 12                                    II. JURISDICTION

¶ 13    Mr. Elassar was sentenced on October 28, 2022, and filed a timely notice of appeal on November 22, 2022. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), and Illinois Supreme Court Rule 604(b) (eff. July 1, 2017), which governs appeals from orders imposing court supervision.

¶ 14                                    III. ANALYSIS

¶ 15    On appeal, Mr. Elassar asserts that the State failed to prove him guilty beyond a reasonable doubt of reckless driving, where the evidence did not show he drove his vehicle with a willful or wanton disregard for the safety of other persons.

¶ 16    As an initial matter, Mr. Elassar acknowledges that his term of court supervision has ended, but asserts, and the State concedes, that this appeal is not moot. We agree. See *People v. Jordan*, 218 Ill. 2d 255, 263 (2006) (finding an appeal from a disposition of supervision is not moot where the defendant has successfully concluded the supervision, as a defendant may still suffer "collateral legal consequences" from the disposition).

¶ 17    When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the

evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000).

¶ 18    The trier of fact need not "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. "The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *People v. Gray*, 2017 IL 120958, ¶ 36. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 19    To sustain Mr. Elassar's conviction for reckless driving as charged, the State had to prove beyond a reasonable doubt that he drove his vehicle with a "willful or wanton disregard for the safety of persons or property." 625 ILCS 5/11-503(a)(1) (West 2020). Section 4-6 of the Criminal Code of 2012 (720 ILCS 5/4-6 (West 2020)) provides that "[a] person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow," and "that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." *Id.*; see *People v. Sienkiewicz*, 208 Ill. 2d 1, 11 (2003) (noting the mental state for reckless driving and for an offense based on recklessness under the Criminal Code are "equivalent").

¶ 20    This court has recognized that reckless driving may be shown by "a driver's conscious disregard for the particular surroundings and circumstances that rises to the level of willfulness and wantonness." *People v. Markley*, 2013 IL App (3d) 120201, ¶ 27 (citing *People v. Paarlberg*,

243 Ill. App. 3d 731 (1993)). "The required mental state for reckless driving is often implied by the manner in which defendant operated his vehicle." *People v. Utsinger*, 2013 IL App (3d) 110536, ¶ 23. While "speed alone is insufficient to support a conviction for reckless driving," excessive speed will constitute evidence of reckless driving, as will "erratic driving, driving under the influence, or driving on the wrong side of the roadway." *People v. Foster*, 176 Ill. App. 3d 406, 410 (1988). "Actual damage to persons or property" is not necessary to establish guilt. *People v. Tuell*, 97 Ill. App. 3d 849, 852 (1981). "It is for the trier of fact to determine whether the allegations and the evidence constituted willful and wanton misconduct." *Id.*

¶ 21     Here, taking the evidence in the light most favorable to the State, we find that a rational trier of fact could have found Mr. Elassar guilty of reckless driving beyond a reasonable doubt. Officer Gratz testified that he observed Mr. Elassar driving evasively away from him, speeding, and turning sharply into a residential neighborhood. As Officer Gratz followed Mr. Elassar into the neighborhood, he observed Mr. Elassar make a U-turn and accelerate past him the other way. Based on his experience, Officer Gratz estimated Mr. Elassar was driving at least 20 miles over the 25-mile-per-hour speed limit. See *People v. Hampton*, 96 Ill. App. 3d 728, 730 (1981) (finding an officer's estimate of a vehicle's speed was sufficient evidence to sustain a conviction for speeding). Officer Gratz also observed multiple pedestrians, including an elderly woman with her dog, walking in the narrow street and moving out of the way of Mr. Elassar's speeding vehicle as it traveled past them at almost double the speed limit.

¶ 22     The testimony of a single witness is sufficient to convict. *Gray*, 2017 IL 120958, ¶ 36. Officer Gratz's testimony recounting his observations, which the trial court accepted, was sufficient evidence to show that Mr. Elassar drove his vehicle with a conscious disregard for the particular surroundings and circumstances. See *Tuell*, 97 Ill. App. 3d at 852-53 (finding a vehicle

that forced a pedestrian to run out of its way showed a willful disregard for the pedestrian's safety sufficient to establish reckless driving); *People v. Burch*, 19 Ill. App. 3d 360, 361-62, 364 (1974) (the defendant's driving constituted willful and wanton misconduct where he drove over the speed limit past three vehicles and three small children standing on the side of the road, forcing an oncoming vehicle to pull off the road to avoid a collision). A rational trier of fact therefore could find that Mr. Elassar drove with willful or wanton disregard for the safety of others and was guilty beyond a reasonable doubt of driving recklessly. See *Foster*, 176 Ill. App. 3d at 410.

¶ 23    Mr. Elassar argues that the State failed to show he acted with willful or wanton disregard for the safety of other persons. Specifically, he contends that excessive speeding alone could not support his conviction for reckless driving, the speed at which his vehicle traveled over the speed limit was based only on Officer Gratz's estimate, and the pedestrians stepping out of the way of his vehicle were not necessarily attempting to avoid being hit but properly giving him the right-of-way as the area had no sidewalks. However, these matters implicate the weight of the evidence, credibility assessments, and inferences drawn from the evidence, all of which were matters for the trial court to determine. *Williams*, 193 Ill. 2d at 338. Moreover, it was for the trial court to determine whether the evidence demonstrated that Mr. Elassar's conduct reflected a willful or wanton mental state. *Id.* We find that a reasonable trier of fact could conclude beyond a reasonable doubt, based on the evidence, that Mr. Elassar committed reckless driving by driving with willful or wanton disregard for the safety of others.

¶ 24                                IV. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26    Affirmed.