2024 IL App (1st) 230624-U

No. 1-23-0624

Order filed October 30, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF:<br>LYNNE E. BARTLETT, | ) <br> ) <br> ) | Appeal from the Circuit Court <br> of Cook County. |
| Counter-Respondent-Appellee, | ) <br> ) | No. 06 D 8805 |
| v. | ) <br> ) | |
| DENNIS M. QUINN, | ) <br> ) | Honorable <br> Mary S. Trew, |
| Counter-Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in its modification of maintenance award nor did it err in ordering a credit for counter-petitioner's overpayment of maintenance to counter-respondent.

¶ 2    Counter-petitioner Dennis M. Quinn filed a petition to modify or terminate his permanent maintenance obligation to counter-respondent Lynne E. Bartlett, in light of his imminent retirement. The trial court denied Quinn's petition, finding that he failed to demonstrate a substantial change in circumstances as defined by Section 510 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), 750 ILCS 5/510 (West 2022). On appeal, we reversed

the trial court's finding that there was no substantial change in circumstances and remanded the case for the court to determine an appropriate monthly maintenance obligation.

¶ 3     On remand, the trial court upheld Quinn's permanent maintenance obligation, but modified the award to an above-guideline amount of $807.78, based on its analysis of the statutory factors set forth in Sections 504 and 510 of the Marriage Act. 750 ILCS 5/504(a), 510(a-5) (West 2022). The court further ordered that Quinn shall receive a credit for the amount he has overpaid in maintenance, retroactive to his date of retirement. Quinn appeals, arguing that the (1) trial court's maintenance award is erroneous and (2) trial court erred when it failed to order Bartlett to repay him for his overpayment of maintenance. For the following reasons, we affirm the trial court's judgment.[1]

¶ 4                               I. BACKGROUND

¶ 5     We recite only the facts necessary to decide this appeal. A full recitation of the facts regarding the dissolution proceedings and previous maintenance judgments can be found in this court's order from Quinn's previous appeal. *Bartlett v. Quinn*, 2022 IL App (1st) 201358-U (*Quinn I*) (reversing the court's order finding voluntary retirement did not constitute a substantial change in circumstances to warrant modification of maintenance). Quinn, currently age 74, and Bartlett, currently age 71, were married on December 1, 1984. On August 16, 2006, Bartlett filed a petition for dissolution of marriage, and a judgment of dissolution was entered on September 2, 2008. The judgment provided, *inter alia*, that Quinn would pay Bartlett $8000 per month in permanent maintenance.

¶ 6     Subsequently, the circuit court reduced Bartlett's maintenance award to $6000 per month for the period between October 2009 and December 2010 and set her permanent maintenance

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

award at $6500 per month thereafter. On August 16, 2019, Quinn filed a petition to modify or terminate maintenance, alleging a substantial change in circumstances in that he planned to retire in April 2020. An amended motion was filed on July 2, 2020, after Quinn delayed his retirement due to COVID 19.

¶ 7    The circuit court held a three-day hearing on Quinn's amended petition. The parties stipulated that (1) Bartlett's cash equivalents, equities, stocks, and retirement totaled $795,473.30 and (2) Quinn's cash equivalents, equities, stocks, inheritance, and retirement totaled $1,754,390.75.

¶ 8    Quinn testified that he lives in a condominium with a mortgage balance of $222,480 and net equity of $99,020. Prior to his retirement, he worked as an attorney for 41 years, most recently at the law firm of Mayer Brown, LLP, where he made $238,000. Quinn retired because he was less effective as a lawyer, was making mistakes at work, was not accruing additional Social Security (SS) benefits, and was continually stressed and tired. In the years since their divorce, he had paid a sum of $972,445 in maintenance to Bartlett. Quinn's June 2019 and August 2020 financial affidavits were admitted into evidence. They indicated that his 2019 gross income was $311,519, with a monthly net income of $13,035. His monthly expenses amounted to $10,400. As of August 2020, Quinn's 2020 gross income was $153,532 and his gross monthly income had dropped to $4430. Quinn does not receive a pension but receives $3239 (post Medicare deductions) monthly SS income. At the age of 72, Quinn will be required to take mandatory distributions from his Individual Retirement Account (IRA) at $40,336 annual projected amount. Over the previous five years, he had gifted cash to his three children in an aggregate amount of $197,000.

¶ 9    Bartlett testified that she lives with two of their adult children in a condominium that has a mortgage balance of $76,099.59 and an estimated fair market value of $315,000. Her two children

contribute a combined total of $1300 monthly. Although Bartlett is a licensed attorney with a master's degree, she stopped working outside the home in 1988. She briefly returned to the workforce from 2011 through 2016, where she worked at Chase Bank until her disabilities required her to leave. From December 2016 through November 2019, Bartlett received $3100 in monthly disability payments from Chase. Due to her severe chronic pain, Bartlett is unable to concentrate and can no longer work in any capacity. She has longstanding medical complications and has had over 20 surgeries. Post-divorce, she received two settlements totaling $140,000 and a $5000 inheritance from her mother. Bartlett's September 2019 and August 2020 financial affidavits were admitted into evidence. They indicated that her 2019 gross income was $101,963, with a monthly net income of $12,416.[2] Her monthly expenses amounted to $13,090. As of August 2020, Bartlett's gross monthly income was $11,775.83, but her monthly expenses had risen to $14,045. She owed a total of $60,711 across three credit cards and had removed $65,000 from her retirement account to pay off various debts. When she turns 72, Bartlett will also be required to take mandatory distributions from her IRA.

¶ 10    Following the hearing, the trial court entered a written order which determined that Quinn had failed to establish a substantial change in circumstances based on his voluntary retirement. Quinn's petition for modification of maintenance was denied; however, the court ordered his maintenance payments to be offset by the amount of benefits Bartlett receives from his SS benefits. Accordingly, the court ruled that Quinn's maintenance obligation moving forward was to be

---

[2]From the documents Bartlett submitted, it appears as if the adjusted gross income listed on her 2019 federal income tax return does not include the monthly amount received in disability payments ($2600 from Monarch Life Insurance and $3100 from Chase, through November). It appears Bartlett received an additional $31,200 from Monarch Life and $34,100 from Chase in 2019, which would bring her 2019 income to approximately $167,263.

$5064.10 monthly. Furthermore, the court ordered Quinn to pay all of Bartlett's reasonable and necessary fees incurred in the litigation.

¶ 11    Quinn appealed, and on March 17, 2022, we issued our order in *Quinn I*, reversing the trial court's finding that Quinn's decrease in income due to his voluntary retirement did not constitute a substantial change in circumstances and affirming the grant of Bartlett's attorney fees. We ordered the case remanded for the trial court to determine the appropriate monthly maintenance payment. The matter was reinstated in the circuit court on June 29, 2022.

¶ 12    On August 9, 2022 Quinn filed a "motion for entry of guideline maintenance order accordance with appellate mandate." Quinn argued that based upon the statutory guidelines and the parties' incomes, guideline maintenance should be $0 monthly, retroactive to his date of retirement. Therefore, Quinn argued that he is entitled to reimbursement for the maintenance he paid to Bartlett from the date of his retirement through July 31, 2022. He requested that the court order Bartlett to reimburse him within 60 days for his overpayment.

¶ 13    Bartlett filed a response, arguing that Quinn's calculations were based on the old maintenance statute. However, Bartlett conceded that Quinn would not owe maintenance under current guideline's calculation. Nonetheless, Bartlett requested that the court determine that an upward deviation in the maintenance calculation is appropriate and preserve the permanent maintenance award.

¶ 14    On December 13, 2022, the circuit court held a zoom hearing on Quinn's motion. Quinn argued that the trial stipulation noted that Bartlett receives $2600 per month in tax free disability and that trial exhibits indicate that she received $1428.60 monthly in SS income. On the other hand, Quinn's monthly gross SS earnings were $3772. Therefore, Quinn argued that calculations made according to the guidelines in Section 504 of the Marriage Act indicate that his monthly

maintenance should be zero. Further, he argued that he was seeking reimbursement for $104,550.80 in maintenance he paid to Bartlett during the period from July 24, 2020 to July 31, 2022, and contribution for attorney fees incurred during the pendency of the prior appeal.

¶ 15      Bartlett noted that this is a permanent maintenance case and she contended that the court should deviate from statutory maintenance guidelines and consider the factors set forth in Sections 510 and 504. Highlighting her disabilities and a myriad of health concerns, Bartlett urged the court to consider the disparities and assets of the parties, as detailed in their financial affidavits. Further, Bartlett noted that although her monthly income is higher than Quinn's, her monthly expenses account for 62% of their total monthly expenditures. Bartlett argued that if she was given 62% of the parties' combined monthly income, it would equal $4836.37 monthly. Deducting her current monthly income of $4028.60, this leaves Bartlett with a difference of $807.78 per month. Accordingly, this is the amount of maintenance Bartlett requested the court award. Bartlett next contended that the prior credit the court awarded to Quinn—$35,365.20 for SS benefits paid to Bartlett—should be deducted from the maintenance overpayment that Quinn made, and that the court should forgive any other maintenance overpayment balance that Quinn paid to Bartlett. Last, Bartlett argued that both parties should be responsible for their own attorney fees incurred during the appellate process.

¶ 16      Quinn argued in reply that the SS offset is not at issue and that, pursuant to Section 504, the maintenance guideline award is the only appropriate issue before the court, and the maintenance should be set to zero. He further argued that the fact that a party chooses not to live within their income should not be an issue for the Court. Last, he argued that the assets of both parties are at parity. Bartlett reiterated that the court has the authority to deviate from the guideline

maintenance amount. Although the parties disputed the correct calculation percentages, both agreed that a guideline maintenance amount would equal $0.

¶ 17    On March 10, 2023, the trial court issued a 17-page written memorandum opinion and order. The order detailed the factors the court considered under both 750 ILCS 5/504(a) and 510(a-5) and noted that based on its analysis of the factors, a deviation from the standard was appropriate. Accordingly, the court ruled that Bartlett shall continue to receive maintenance from Quinn, in the amount of $807.78 monthly, per Bartlett's request. Additionally, the court held that "as to the reimbursement of $104,550.80" from Bartlett to Quinn based on the overpayment of maintenance, Quinn shall receive a credit, with the parties "comput[ing] the amount to be paid." The court ruled that the duration of maintenance shall remain indefinite and that both parties are responsible for their own attorney fees.

¶ 18                          III. ANALYSIS

¶ 19    On appeal, Quinn contends that the (1) trial court's maintenance award is erroneous and (2) trial court erred in ordering a credit, rather than a repayment, for his overpayment of maintenance. Bartlett responds that the trial court both properly ordered indefinite maintenance in the amount of $807.78 monthly and properly ordered any overpayment reimbursement to be paid in the form of a credit. Further, Bartlett argues that she is entitled to have Quinn pay both her trial court and appellate court attorney fees.

¶ 20    Pursuant to Section 504(a) of the Marriage Act, a court may, after considering all relevant factors, "grant a maintenance award for either spouse in amounts and for periods of time as the court deems just." 750 ILCS 5/504(a) (West 2022). As provided by subsection 510(a-5) of the Marriage Act, an order for maintenance may only be modified or terminated upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a-5) (West 2022). If the "court determines

that there has been a substantial change in circumstances, it may modify the maintenance award, but it is not required to do so." *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 48 (citing *In re Marriage of Anderson*, 409 Ill. App. 3d at 203). In *Quinn I*, we determined that Quinn demonstrated a substantial change in his circumstances.

¶ 21        Following the finding that a substantial change in circumstances has occurred, the trial court must then consider the factors set forth in Sections 504(a) and 510(a-5) of the Marriage Act in deciding whether to modify the maintenance award. 750 ILCS 5/504(a), 510(a-5); *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). Section 504(a) sets forth 14 factors the trial court shall consider:

> (1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;
>
> (2) the needs of each party;
>
> (3) the realistic present and future earning capacity of each party;
>
> (4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;
>
> (5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;
>
> (6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, or employment, and whether that party is able to support himself or herself through appropriate employment;
>
> (6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/510(a-5).

¶ 22    Section 510(a-5) directs the trial court to consider the following nine factors:

(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/510(a-5).

¶ 23    If the court concludes that a maintenance award is appropriate, the court shall order either guideline maintenance in accordance with 504(b-1)(1) or non-guideline maintenance in accordance with 504(b-1)(2). 750 ILCS 5/504(b-1) (West 2022). When following the statutory guidelines for modifying a maintenance order entered prior to January 1, 2019, the court shall calculate the amount "by taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income ***." *Id*. § 504(b-1)(1)(A-1) (West 2022). But that calculated amount, when added to the payee's gross income, may not equal an amount more than 40% of the parties' combined gross income. *Id*. If the court decides—after consideration of all relevant factors set forth in 504(a)—that a guideline maintenance amount is not appropriate, the court may set a non-guidelines award. *Id*. § 504(b-1)(2) (West 2022). Further, if the court deviates from the guidelines, "it shall state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning for any variance from the guidelines." *Id*. § 504(b-2)(2) (West 2022).

¶ 24    " 'The trial court has discretion to determine the propriety, amount, and duration of a maintenance award.' " *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 80 (quoting *In re Marriage of*

*Reynard*, 344 Ill. App. 3d 785, 790 (2003)). The court's determination regarding the maintenance amount will not be disturbed absent a clear abuse of discretion. *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 49. An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum*, 235 Ill. 2d at 36). " 'The benchmark for a determination of maintenance is the reasonable needs of a spouse seeking maintenance in view of the standard of living established during the marriage, the duration of the marriage, the ability to become self-supporting, the income-producing property of a spouse, if any, and the value of the nonmarital property.' " *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 379 (1991). It is well established that we defer to the trier of fact to determine "the credibility of witnesses and the weight to be given to their testimony," *People v. Feliciano*, 2020 IL App (1st) 171142, ¶ 125 (quoting *People v. Jordan*, 218 Ill. 2d 255, 274 (2006)), and we will not substitute our judgment for that of the fact finder. *In re Marriage of Anderson*, 409 Ill. App. 3d at 199. Moreover, "the reviewing court views the evidence in the light most favorable to the appellee," and "[w]here the evidence permits multiple reasonable inferences, [we] will accept those inferences that support the court's order." *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 25    Here, it is undisputed that a maintenance award based on the parties' incomes, in accordance with the statutory guidelines, would be $0. However, as detailed *supra*, the court has the discretion to deviate from applicable guidelines once it considers all Section 504(a) and 510(a-5) factors. 705 ILCS 5/504(b-2)(2) (West 2022). After a thorough analysis of all applicable factors, the trial court determined that a deviation from the applicable guidelines was appropriate. While Quinn argues that the trial court's references to case law from 2018 and 2019 "confuse[d] the issues," we find that the court applied the proper statutory analysis in reaching its determination

that a variance from the guidelines was proper. Quinn avers that the court did not diligently consider and balance the factors when it determined that the maintenance award should deviate from the guidelines. While Quinn concedes that the court listed and discussed "several of the factors," he nevertheless argues that the court's award is erroneous because it failed to state its reasons for varying from the guidelines. 750 ILCS 5/504(b-2)(2) (West 2022). Last, he argues that the court could not explain how it balanced the factors because it rested its entire maintenance determination on only part of one single factor—Bartlett's stated needs.

¶ 26                                 A. Maintenance Award

¶ 27                               1. 750 ILCS 5/504(a) Factors

¶ 28        The trial court first considered the 750 ILCS 5/504(a) factors. Both parties, in their respective briefs, detail all the information they deem pertinent with respect to each factor. We recognize these arguments and acknowledge that testimony and evidence was given on each of these various elements during the 2020 and 2022 hearings. We summarize below the court's analysis of each factor from her March 2023 written opinion and order.

¶ 29        In addressing the first factor—the income and property of each party—the court relied on Quinn's testimony regarding the reduction of his annual salary in 2020, prior to his retirement. It considered the inheritance Quinn received from his parents and his current monthly income— $3772 in monthly SS benefits. The court additionally relied on Bartlett's testimony regarding her 2019 income and her current monthly income of $4028.60 in combined SS and disability benefits. Further, the court considered the inheritance Bartlett received from her mother; Bartlett's net equity on her condominium; her retirement assets; the income Bartlett received while she worked at Chase; her support of her sons in graduate school; and her personal spending, which included "extravagant" purchases that were not a reflection of her current spending.

¶ 30      In considering the needs of each party (504(a)(2)), the court noted Quinn's testimony regarding his monthly living expenses and that he planned to cover these costs with savings, investments, and retirement funds. As for Bartlett, the court detailed her extensive testimony concerning her significant medical needs due to a series of physical traumas that have left her with various health issues—severe orthopedic issues, nerve pain, ringing in her left ear, jaw pain, shoulder pain, a tenuous bite, caps on numerous teeth, and problems with her right knee. The court acknowledged that Bartlett has had over 20 surgeries, has Ehlers-Danlos Syndrome,[3] walks with a cane, has a full walker, and sees the doctor at least every two weeks. Bartlett testified regarding her monthly expenses and stated that she pays for therapy, counseling, dental, orthodontia, optical, and medicine costs out-of-pocket. Bartlett, like Quinn, has a "negative amount per month." While Bartlett receives a combined $1300 monthly from two of her adult children, she also contributes to their monthly living expenses. The court also acknowledged conflicting testimony regarding Bartlett's mobility and her need for walking assistance.

¶ 31      Regarding the third factor—present and future earning capacities—the court noted that Quinn has retired and will not be able to return to work as an attorney, due to the increasing stress of his job, his memory and concentration, and his loss of efficacy and effectiveness. Bartlett is also retired but is disabled and has health concerns.

¶ 32      The court next considered Bartlett's impaired earning capacity due to her working as a stay-at-home mother (504(a)(4)), and Quinn's retirement and his inability to return to work as an attorney (504(a)(5)). Further, the court noted that both parties are retired attorneys who will be unable to return to work as attorneys (504(a)(6)). While Quinn and Bartlett have children, they are all emancipated (504(a)(6.1)).

---

[3]The court described this as a "genetic disorder that causes hyper-systemic mobility, eye issues, and causes her joints to disintegrate."

¶ 33        In analyzing the standard of living established during the marriage (504(a)(7)), the court referenced Bartlett's testimony that she "knows she lives at a negative amount and is jeopardizing her own future by helping her adult children." Bartlett explained that her current small condominium does not compare to her standard of living during the marriage because the marital home had been completely redone, floors were replaced, there was a brand-new kitchen, new appliances, a yard, and a second floor was added.

¶ 34        The court noted that the parties were married for nearly 24 years (504(a)(8)), and both parties are retired senior citizens (504(a)(9)). The court considered the parties' 2019-2020 yearly incomes and detailed their retirement assets and Quinn's testimony that his retirement and SS benefits should be enough to live the rest of his life without working (504(a-10)). In addressing factor 12—contributions and services by Bartlett to the education, training, career or career potential of Quinn—the court reiterated that despite Bartlett being a licensed attorney, she was a stay-at-home mother for most of her children's lives, allowing Quinn to continue to be a practicing attorney. The court did not comment on factor 11—tax consequences to each party, factor 13— any valid agreement of the parties, and factor 14—other factors the court expressly finds to be just and equitable.

¶ 35        After consideration of all the above factors, the court found that a maintenance award above the guideline amount of $0 is appropriate.

¶ 36                                2. 750 ILCS 5/510(a-5) Factors

¶ 37        Next, the court considered the 750 ILCS 5/510)(a-5) factors. In addressing the first factor— change in employment status and whether that change was made in good faith—the court noted Quinn's retirement in July 2020 and noted that he had "made this retirement in good faith because

he paid Lynne nearly one (1) million in maintenance and retired at the appropriate age of seventy (70)."

¶ 38    Regarding Bartlett's efforts to become self-supporting and the reasonableness of those efforts (510(a-5)(2)), the court determined that Bartlett had attempted to become more self-sufficient. The court relied on Bartlett's testimony that she returned to work, since she recognized that she did not have appropriate funds for retirement. Bartlett worked for Chase Bank as a bank teller 20 hours per week, then as a legal specialist, and then as an attorney. However, she had to stop working because her pain was so severe she could not concentrate. Although she went on long-term disability, she no longer receives any disability benefits from Chase.

¶ 39    The court noted that its analysis of factor 510(a-5)(3)—impairment of the present and future earning capacity of either party—was the same as its 504(a) factors analysis. In considering the duration of the maintenance payments previously paid relative to the length of the marriage, the court observed that Quinn has paid $919,435 in maintenance to Bartlett as of September 2020, and that the parties were married for almost 24 years.

¶ 40    The court next considered Quinn's award of a coin collection with an agreed value of $30,000 (510(a-5)(6)), and Quinn's retirement and subsequent significant decrease in income (510(a-5)(7).

¶ 41    The court did not comment on factor four—tax consequences of the maintenance payments upon the respective economic circumstances of each party, factor eight—property acquired and currently owned by each party following the dissolution of marriage, and factor nine—other factors the court expressly finds to be just and equitable.

¶ 42                                  3. Trial Court's Award

¶ 43    Quinn claims that the court's award is erroneous because the memorandum opinion and

order neither sets out its reasons for varying from the guidelines nor does it explain how the court balanced the applicable factors. He further insists that the court's maintenance determination "rests upon its application of only part of a single factor," since the court stated that it was basing the amount of the award on Bartlett's testimony during arguments on December 13, 2022.

¶ 44    However, the record does not support Quinn's interpretation. The court stated that, based on its analysis of the Section 504(a) and 510(a-5) factors, it determined that Bartlett shall continue to receive maintenance of an indefinite duration from Quinn. Noting Bartlett's argument on December 13, 2022, the court stated that Bartlett argued she is negative $807.78 per month in her living expenses, and therefore ruled that $807.78 per month is an appropriate amount of maintenance. At the December 13 hearing, Bartlett explained that her monthly expenditures account for 62% of the parties' total monthly expenditures and argued that she should therefore receive 62% of the parties' combined monthly income, or $4836.37. Deducting her current monthly income from that 62%, this left a difference of $807.78 per month. Accordingly, this is the amount of maintenance that Bartlett requested the court award. The court's reference to Bartlett's argument in its order does not denote that the court rested its determination solely on "only part of a single factor." To the contrary, the court explained that it had analyzed all Section 504(a) and 510(a-5) factors in deciding whether Bartlett should continue to receive maintenance payments. Only then did the court determine the appropriate amount of monthly maintenance. While the court specifically referenced Bartlett's requested maintenance amount, the record establishes that Bartlett's needs were not the only factor the court considered.

¶ 45    In his reply brief, Quinn argues that Bartlett's debt and inability to pay her monthly expenses is not due to her medical expenses. Instead, he claims "Bartlett has debt because she chooses to have debt." He focuses on Bartlett's monthly expenses that he attributes to his two adult

children who live with her to explain that Bartlett does not need the maintenance award to support herself. He further claims Bartlett overstated her actual expenses. However, in its order, the trial court acknowledged Bartlett's continued support of her two adult children, her "extravagant" past spending, and her extensive medical needs and considered these factors in its analysis. We will not disturb the court's factual findings unless they were against the manifest weight of the evidence, meaning that the opposite conclusion was clearly evident or the court's findings were unreasonable, arbitrary, and not based on the evidence. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 34. Based on the record before us, we cannot say that the court's finding as to the accuracy of Bartlett's financial affidavits and veracity of her testimony was against the manifest weight of the evidence. Quinn further argues that Bartlett has not experienced any impairment of her present and future earning capacity from being a stay-at-home mother because her only impairments have come from "her health, if at all." We find this argument disingenuous at best. Despite being an attorney and having a master's degree, Bartlett gave up her career and earning potential to raise the parties' three children. Undoubtedly, the court was free to conclude that this influenced her present and future earning capacity.

¶ 46        Quinn nevertheless contends that if the statutory factors had been considered properly, the trial court would have ordered a guideline maintenance award of $0. Fundamentally, Quinn is asking this court to take on the trial court's role of analyzing, weighing, and balancing the applicable statutory factors, and he is requesting that we substitute our judgment for that of the trial court. We will not do so. *In re Marriage of Anderson*, 409 Ill. App. 3d at 199.

¶ 47        Quinn is correct that 750 ILCS 5/504(b-2)(2) (West 2022) directs the court to state its reasoning when varying from the guidelines. Ideally, the trial court would have provided more explicit reasoning in its order. Nonetheless, the memorandum opinion and order demonstrates that

the trial court engaged in a thorough and detailed review of each of the Section 504(a) and 510(a-5) factors. Here, the trial court's analysis of the factors supports the court's decision to deviate from maintenance guidelines and we cannot say the court's determination was an abuse of discretion.

¶ 48                                    B. Reimbursement via Credit

¶ 49        Quinn next argues that the court erred when it ordered a credit, rather than immediate repayment, to him for his overpayment of maintenance. Bartlett counters that the trial court properly ordered Quinn to be reimbursed in the form of a credit. If a court's order for reimbursement is not "fit, reasonable and just," it will be considered an abuse of discretion. See *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 410 (1990).

¶ 50        Given the parties' respective financial circumstances, there is a significant likelihood that an order requiring Bartlett to immediately reimburse Quinn for the maintenance overpayment would negatively impact her ability to support herself in the lifestyle the parties enjoyed during their marriage. Accordingly, we find the trial court's decision that Quinn should receive a credit, with the parties "comput[ing] the amount to be paid," to be "reasonable and just." *Rogliano*, 198 Ill. App. 3d at 410. Therefore, the court's order did not constitute an abuse of discretion.

¶ 51                                        C. Attorney Fees

¶ 52        Last, in the concluding paragraph of Bartlett's brief, she requests that this court grant her attorney fees and costs, both from the remand before the trial court and from fees incurred during this appeal. However, as the trial court ordered that the parties are each responsible for their own attorney fees, Bartlett does not properly raise this issue before us on appeal. " 'Appellees may not argue alleged errors unless they timely file a cross-appeal.' " *Bd. of Trustees of Univ. of Illinois v. Illinois Educ. Labor Relations Bd.*, 2015 IL App (4th) 140557, ¶ 38 (quoting *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) (Absent a cross-appeal, "[a]n appellee

will not be permitted to challenge or ask the reviewing court to modify a portion of the trial court's order.")). As Bartlett did not file a cross-appeal, we are confined to the issues Quinn presented on appeal. See *id.*; *Atkins v. Robbins, Salomon, & Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 84. Accordingly, we find the issue is not properly before this court and do not address Bartlett's argument.

¶ 53                                 IV. CONCLUSION

¶ 54            Based on the foregoing, we affirm the trial court's order.

¶ 55            Affirmed.